MABEY & COOMBS, L.C.
J. Michael Coombs (Bar No. 3639)
Highland Ridge
4568 So. Highland Drive, Suite 290
Salt Lake City, UT  84117-4237
Telephone: (801) 467-2779
Facsimile: (801) 812-8469
Email address:  jmcoombs77@gmail.com

*Attorneys for Defendant Standard Registrar &
Transfer Co., Inc.*

## IN AND BEFORE THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT RYAN JOHNSON, as Executor and Trustee of the Estate of Terrence Blair Hunter,<br><br>     Plaintiff,<br><br>vs.<br><br>STANDARD REGISTRAR & TRANSFER COMPANY, INC., a Utah corporation,<br><br>     Defendant. | **MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6), ALTERNATIVELY, FOR A COSTS BOND, AND FOR AN AWARD OF FEES**<br><br>Case No. 2:22-cv-591-DAO<br><br>Magistrate Judge Daphne A. Oberg |

## **MOTION**

Defendant Standard Registrar & Transfer Co., Inc. ("Defendant" or "SRTC"), a Utah corporation, hereby moves the Court, pursuant to Rules 12(b)(1) and 12(b)(6), *Fed. R. Civ. Pro.*, for dismissal of this action for lack of standing.  Also, because the $75,000 alleged in the Complaint as damages are entirely speculative and based on documents Plaintiff Johnson has yet to discover—the "amount in controversy" threshold for diversity jurisdiction is lacking.

The basis for this Motion is that on September 20, 2021, Judge Barry Lawrence of the Third Judicial District Court in and for Salt Lake County, State of Utah, issued a Ruling and Order (R&O) denying the standing of Plaintiff Robert Ryan Johnson ("Plaintiff" or "Johnson"), a Canadian national living outside the US, to act as personal representative of the Estate of Canadian national, Terrence Hunter.  Judge Lawrence's R&O constitutes The Law of the Case.[1] and Johnson has flaunted and ignored it.  In addition, because Johnson, as explained below, is believed to be an imposter and professional suer of stock transfer agents,[2] this Court should require more of him to prove standing than it might otherwise.

SRTC also moves the Court for an award of fees and costs under *Utah Code Ann*. § 78B-5-825 titled **Attorney fees -- Award where action or defense in bad faith – Exceptions**, and 28 U.S.C. § 1927 titled **Counsel's liability for excessive costs**.

If the dismissal motion is denied, Defendant SRTC moves the Court for an order commanding Johnson to post a costs bond of no less than $25,000 to cover Defendant's costs of having to travel to Canada and Mexico to take depositions.  *See* Argument III below.

This Motion is supported by a Declaration of Defendant's counsel, J. Michael Coombs.

## MEMORANDUM
## Statement of Facts

---

[1] Under the doctrine, a successor judge lacks authority to overrule a previous judge's decision unless it appears to the second judge that the first judge's ruling was clearly erroneous and will infect the subsequent proceedings with error.  *Build, Inc. v. Utah DOT*, 2018 UT 34 at ¶ 23, 428 P.3d 955, 2018 Utah LEXIS 115 at p. ***10, 869 Utah Adv. Rep. 22, 2018 WL 3454760 (Utah Sup. Ct. 2018).

[2] Johnson has a pattern of bringing lawsuits in which he claims damages from stock transfer agents for allegedly wrongfully transferring stock, whereupon he then he seeks to make claims on the stock transfer agent's E & O Insurance Policies.  Johnson did this before in Utah 9 years ago as a principal of one of two Toronto-based plaintiffs.  *See Qubed Capital Ltd. and Quintus Eight Capital Ltd. v. Action Stock Transfer*, Third Judicial Dist. Court Case No. 2098465 (Judge Sandra Peuler).  This repetitive questionable activity is more than a mere coincidence and worthy of consideration by this Court.

2

1. Defendant Standard Registrar & Transfer Co., Inc. ("Defendant" or "STRC") is a Utah corporation and stock transfer agent. ¶ 2, Coombs Decl.

2. On July 1, 2021, Canadian national, Robert Ryan Johnson ("Johnson"), commenced a nearly identical lawsuit in the Utah Third Judicial District Court against SRTC in which he claimed an astonishing $200 MILLION in damages as personal representative of the Estate of Canadian, Terrance Hunter, for SRTC's alleged wrongful transfer of stock certificates having allegedly ineffective endorsements and without his having first discovered any SRTC documents to support his claims. *See Robert Ryan Johnson v. Standard Registrar & Transfer Co., Inc.*, Third Dist. Ct. Case No. 210903485, assigned to Judge Barry Lawrence, a copy of the Docket Sheet and Complaint of which are attached hereto as **Exhibit A**. ¶ 7, Coombs Decl.

3. Johnson supported his Complaint before Judge Lawrence with the same irrelevant and inapplicable Mexican notary document that he attaches in this action as Exhibit B. This Mexican notary document, together with the Hunter death certificate, sets forth that Hunter, a Canadian, signed a Last Will and Testament on September 1, 2019, but two days before he died on September 3, 2019, and that Hunter died in Richmond, British Columbia, not Mexico.[3] The Mexican document (based on documents Hunter brought from Canada and gave to the Mexican notary) announces that according to Hunter's Last Will and Testament, Johnson was the purported executor of Hunter's Estate. A Mexican notary is not a Mexican Probate Court. More

---

[3] Interestingly, in Johnson's Affidavit that he filed in Opposition to SRTC's motion to dismiss in the state court action, Docket Entry No. 20, Johnson attests that Hunter died of cancer in Canada. In ¶'s 11-13 of the Complaint on file herein, it is alleged that Hunter was admitted to a British Columbia hospital in August and signed his Last Will and Testament there on September 1, 2019, dying less than 48 hours later. If so, Hunter surely would have been on morphine or other heavy narcotics on the day he signed his Last Will and Testament, thereby depriving him of any testamentary capacity to appoint Johnson.

importantly, there is no legal basis to conclude that a Mexican notary document announcing and publishing what Johnson told the notary to recite—not an order of a Mexican Probate Court—has extra-territorial legal effect outside of Mexico.[4]

4. SRTC responded to Johnson's $200 MILLION lawsuit with a Motion to Dismiss on standing and other grounds. ¶ 8, Coombs Decl. After briefing and oral argument, Judge Lawrence, on September 20, 2021, one year ago, issued a Ruling and Order (R&O), a copy of which is attached hereto as **Exhibit B**, in which the Court held:

> 2. The Motion for a Cost Bond is GRANTED. Plaintiff must file a cost bond in the amount of $5,000 within fourteen (14) days.
>
> 3. The Court imposes the following ORDER upon the plaintiff, in order to demonstrate that the plaintiff has the appropriate power and authority to legally act on behalf of the Estate and bring these claims. Within 90 days (or a reasonable time thereafter if 90 days is not feasible), Plaintiff must file a brief with the Court supporting Mr. Johnson's power and authority to act on behalf of the Estate. Ideally, that would include an Order from a Court (in Mexico or Canada) providing the basis for that authority. If, for whatever reason, that is not possible, then Plaintiff must file a reasonable substitute which should include either: i) opinion letters from law firms in Canada or Mexico upon which this Court may rely, and/or ii) a legal brief with argument and citation to Canadian, Mexican and/or international law reflecting Mr. Johnson's authority to act under these circumstances.

5. Johnson never took any action to follow or obey Judge Lawrence's R&O quoted above and because he never posted the $5,000 cash costs bond, Judge Lawrence, on November

---

[4] This is evident from Judge Lawrence's Ruling and Order, addressed below, in which Judge Lawrence ordered Johnson to comply with applicable Canadian or Mexican probate law.

10, 2021, dismissed Johnson's lawsuit, a copy of the Dismissal Order being attached hereto as **Exhibit C**.  ¶ 9, Coombs Decl.

6. Determined to create a claim against SRTC without having to comply with Judge Lawrence's R&O, Johnson then hurried and initiated an Informal Probate action in Third District Court, *In re: Estate of Terence Hunter*, Utah Third Jud. Dist. Court Probate No. 213902711, in which he sought to get himself formally appointed personal representative of the Hunter Estate by a Utah judge.[5]

7. Thereafter, on December 2, 2021, Johnson's probate lawyer caused a subpoena duces tecum to be served on SRTC requesting every document in SRTC's possession that related to Terrence Hunter, the deceased, and the various public companies in which he had allegedly been involved.  ¶ 10, Coombs Decl.  A copy of the subject subpoena is on file in that action.  *See* **Exhibit D** hereto, the Utah probate action docket sheet.

8. In response, SRTC lodged a strenuous Objection to the probate court subpoena under Rule 45, *Utah R. Civ. Pro.*, an Objection that Johnson never opposed, nor did he seek to

---

[5] Had Johnson been a legitimate foreign personal representative of a foreign estate as he had represented to Judge Lawrence, his probate action filed here would have been predicated upon Chapter 4 of the *Utah Probate Code* governing foreign personal representatives.  But it was not.  Instead, Johnson sought an original appointment as if Terrence Hunter, the decedent, died here, was an American citizen and Utah resident, and whose personal assets, on death, were located in this jurisdiction.  At the same time, it is significant that the deceased never had a connection to Utah as required under *Utah Code Ann*. § 75-1-301 of the *Utah Probate Code* titled **Territorial Application**.  This is because Terrence Hunter, a Canadian citizen, died in Vancouver, British Columbia, Canada, on September 3, 2019, and, according to his death certificate, he resided there.  Hunter had no connection to Utah, let alone Mexico.  Moreover, none of Hunter's property is in the control of SRTC as required by § 75-1-301.  In fact, no property of Hunter, the deceased, is located in Utah and to the extent it ever was, it was years ago and only momentarily passed through SRTC's hands.  *See* ¶ 11, Coombs Supporting Declaration.  Johnson's relentless abuse of the Utah legal system to seek and obtain private and confidential records from SRTC as the so-called personal representative of the Hunter Estate when he has no standing to do so is fraudulent if not criminal conduct.  *See* ¶'s 4-6 and 12, Coombs Decl.

enforce the subpoena as required of him under the rule.[6] Instead, he did nothing. *See* ¶ 10, Coombs Decl. and **Exhibit D** hereto.

9. Having abandoned his subpoena tactic, Johnson then obtained a third lawyer or law firm and on September 12, 2022, Johnson filed the instant action. His federal Complaint borrows considerably from the Complaint he filed before Judge Lawrence, the only difference being that the Judge Lawrence Complaint contains a breach of contract claim which the instant Complaint deleted, only to add new claims for negligence and conversion. Curiously, the latest Complaint also deletes naming the Swiss and German purchasers of Hunter's stock as party-defendants. Significantly, in the section titled "SRTC's Refusal to Relinquish Relevant Transfer Documentation to Johnson," pp. 5-6 of the Complaint on file herein, no mention is made of Judge Lawrence's R&O denying Johnson standing, nor is any mention made of Johnson's subpoena and his failure to try and enforce it as required of him under Rule 45, *Utah R. Civ. Pro*.

10. By way of background, nine (9) years ago, Johnson and his then partner or associate, Jefferson Mesidor, a convicted felon, brought a lawsuit in the Utah Third Judicial District Court against another Utah stock transfer agent, Action Stock Transfer ("Action"), a small stock transfer agent like SRTC here. *See Qubed Capital, Ltd. and Quintus Eight Capital Ltd. v. Action Stock Transfer*, Case No. 2098465 (Judge Sandra Peuler). SRTC's counsel here, Coombs, defended Action in that case. Johnson and Mesidor's 2012 Complaint, of which this

---

[6] In SRTC's Objection, in addition to addressing the Mexican notary document as hokey, SRTC also addressed Exhibit C to the Complaint on file herein, a one-page Canadian court document. That document assumes that the Mexican notary document is a valid Mexican probate court document lawfully issued by a Mexican probate court having jurisdiction over the Estate, which it is not. Nonetheless, the Canadian document is irrelevant here because, by its own language, it only relates to estate property located in British Columbia. It thus has no bearing on this action whatsoever.

Court can take judicial notice, alleges through their Toronto entities, that Action, based on allegedly fraudulent instructions faxed to it from Canada, negligently and wrongfully transferred shares of a public company called Vegas Biofuels to an individual in Michigan named Randy Hamdan, thereby causing them damages of $700,000.  It turned out that Hamdan paid Robert Ryan Johnson, Plaintiff herein, for the stock and was entitled to the shares he received from Action, something that Johnson concealed from Judge Peuler in his Complaint.  ¶¶ 4-6, Coombs Decl.; *see* the Hamdan Affidavit filed in the Action Stock Transfer case (identifying, in its Ex. A, "Robert Ryan Johnson," Plaintiff herein, by name).

11. Based the foregoing, and now, this new, third lawsuit brought in federal court without complying with Judge Lawrence's R&C, Johnson has a pattern of bringing spurious lawsuits against stock transfer agents in which he claims damages for wrongfully transferring stock based on alleged forged signatures.  Then, with an apparent stable of handwriting experts, he seeks to make claims on their E & O Policies, something which is easier for Canadians to do than Americans because Canadians are not required to obtain Medallion Signature Guarantees on the reverse sides of stock certificates.  ¶ 12, Coombs Decl.  Counsel believes that this is what Johnson does for a living given that what information is available about him on the Internet shows no visible means of income other than he has held himself out in the past on the Internet as an "artist" and "film producer." *Id*.

## ARGUMENT

**Point I—A UTAH JUDGE HAS PREVIOUSLY HELD THAT JOHNSON HAS NO STANDING TO ACT AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DECEASED CANADIAN, TERRENCE HUNTER.  THIS COURT SHOULD HONOR AND UPHOLD THAT DECISION, DISMISSING THIS CASE ACCORDINGLY.**

The law is well-settled that only the lawful personal representative of an estate may assert claims belonging to the estate. *A.B. v. City of Woodland Park*, 174 F. Supp. 3d 1238 at *1246, 2016 U.S. Dist. LEXIS 41247 at **13 (DC Colo. 2016); *Pierucci v. Pierucci*, 331 P.3d 7 at *16, 2014 Utah App. LEXIS 167 (Utah App. 2014). That includes all claims in Johnson's Complaint. At the same time, Judge Lawrence held, over a year ago, that Johnson has no such standing to act as personal representative of the Hunter Estate. See ¶ 4, Statement of Facts, above.

The Utah Supreme Court recently addressed standing in *S. Utah Wilderness All. V. Kane City Commission*, 2021 UT 7, 2021 Utah LEXIS 8, 484 P.3d 1146, 2021 WL 728214 (Utah 2021). At 2021 UT at ¶ 16 and 2021 Utah LEXIS at *7, the Court held

> [S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties (citing *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808).

*Accord, Washington County Water Conservancy Dist. v. Morgan,* 2003 UT 58 at ¶ 6 n.2, 82 P.3d 1125 (Utah 2003); *Harris v. Springville City,* 712 P.2d 188, 190 (Utah 1986) ("[L]ack of standing is jurisdictional."); *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (standing is necessary to invoke the court's jurisdiction).[7] Based on Johnson's refusal and failure to comply with Judge Lawrence's September 20, 2021 R&O holding that he must prove, under applicable international law, that he is the lawful personal representative of the Hunter Estate before he may sue in that capacity in Utah, Johnson's Complaint and now third lawsuit against SRTC should be dismissed under Rules 12(b)(1) and 12(b)(6).

---

[7] Defendant SRTC cites Utah state law because, in a diversity action, federal courts apply the substantive law of the forum state, including the choice of law rules. *Klaxon Co. v. Stentor Elec. Mf. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941), *cert. denied*, 316 U.S. 685, 62 S. Ct. 1284, 86 L. Ed. 1757 (1942); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008).

## Point II—THE COMPLAINT ALLEGES NO FACTS BY WHICH ONE CAN REASONABLY CONCLUDE DAMAGES OF AT LEAST $75,000. ACCORDINGLY, THE CASE SHOULD BE DISMISSED FOR LACK OF DIVERSITY JURISDICTION.

A plaintiff must provide enough facts in his complaint to "convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." *Adams v. Reliance Standard Life Ins. Co*., 225 F.3d 1179, 1183 (10th Cir. 2000).[8] This is the law. Johnson's Complaint abjectly fails in that regard. He has no records whatsoever to show that there are any wrongful endorsements on any stock certificates endorsed by the deceased, Terrence Hunter, giving rise to one penny in damages. He is thus incapable of demonstrating any damages. If it is impossible for him to calculate any damages on the face of his Complaint, how can he legitimately or honestly claim at least $75,000 in damages? The answer is that he cannot.

In *Smith v. World Fin. Network Bank*, 2017 U.S. Dist. LEXIS 16325 at *7, 2017 WL 480415 (SD Ohio 2017), a federal district court in Ohio dismissed plaintiff's complaint for its failure to show a reasonable relationship to the damages claimed and the jurisdictional floor of $75,000, holding that claims of ten billion dollars in damages was not asserted in good faith.

In *McDonald v. Nationwide Title Clearing, Inc*., 661 Fed. Appx. 518, 521, 2016 U.S. App. LEXIS 16456 (10th Cir. 2016), the Tenth Circuit, citing *Adams, supra*, held that there was no diversity jurisdiction because plaintiff's complaint did not allege any monetary damages from an alleged transfer of a mortgage or demonstrate the potential to recover over $75,000 on his claims. In *Just Us Realtors, LLC v. Nudge, LLC*, 2019 U.S. Dist. LEXIS 102853 at *24-25, 2019 WL 2526731 (DC Utah 2019), Judge Tena Campbell dismissed plaintiff's complaint for failure to plead the required amount in controversy and held that while "a complaint need not allege a

---

[8] (citing *St. Paul Indemnity Co. v. Red Cab. Co*., 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed 845 (1938)).

specific sum in order to assert diversity jurisdiction," a plaintiff must still "allege facts sufficient 'to convince the district court that recoverable damages will bear a reasonable relation to the jurisdictional floor [of $75,000].'"[9] Here Johnson alleges no facts showing any damage because his entire case against SRTC is speculative. While he desperately needs documents from SRTC to enable him to make a claim, the law is clear that he is prohibited from using the legal system to discover his way into a fraud or other claim.[10]

In short, courts must determine the amount in controversy with the facts before them, not on the basis of the "uncertain, contingent, and speculative" costs of future litigation. *Phelps Oil & Gas, LLC v. Noble Energy, Inc.*, 5 F.4th 1122 at *1128, 2021 U.S. App. LEXIS 21425 at **14 (10th Cir. 2022) (reversing lower court for not dismissing case on account of lack of amount in controversy and thus, lack of subject matter jurisdiction). While Johnson's pleading alleges damages on the basis of his potentially discovering forged stock endorsements, the law is clear that when determining the amount in controversy, the complaint is examined on the basis of [what it says at] the time it is filed. *Id*.; *United Pacific Ins. Co. v. Durbano Constr. Co.*, 144 F.R.D. 402 at *406, 1992 U.S. Dist. LEXIS 16961 at **7 (DC Utah 1992). Because Johnson has no evidence of any wrongful endorsement or other illegality by SRTC, Johnson's damages are entirely speculative. He has been on a three-year fishing expedition to create a claim and needs to conduct discovery to find one. That is what his improper probate action before Judge Faust was about.

---

[9] Accord, *Nueterra Healthcare Mgmt., LLC v. Parry*, 2012 U.S. Dist. LEXIS 47840 at *6 (DC Utah 2012) (Judge Ted Stewart).

[10] *See, e.g., Resler v. Financial Group, Inc.*, 668 F. Supp. 1454, 1458 (DC Okla. 1985) (a groundless fraud claim cannot be used to discover a wrong.)

10

Based on Johnson's inability to show that he has any damage, let alone the $75,000 jurisdictional minimum, Johnson's Complaint should be dismissed for lack of subject matter jurisdiction.

**Point III**—**IF THIS MOTION IS DENIED, PLAINTIFF, AS A FOREIGN NATIONAL SUING HERE, AND HAVING VIOLATED A UTAH COURT ORDER AND RULE 45, *UTAH R. CIV. PRO.*, SHOULD BE ORDERED TO POST A SUBSTANTIAL CASH COSTS BOND IN ORDER TO PROCEED.**

While not expressly provided in the rules, federal courts nonetheless frequently entertain motions requiring a plaintiff to post costs bonds covering potential costs and attorney fees that may be awarded the opposing party at the end of the action.[11]  S*ee, e.g., Van Bui v. Children's Hosp.*, 178 F.R.D. 54, 56 (E.D. Pa. 1998) (dismissing plaintiff's complaint for failure to file security for costs), *aff'd*, 178 F.3d 1278 (3d Cir. 1999); *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999) (discussing whether plaintiff's inability to post security warrants dismissal); *Johnson v. Kassovitz*, No. 97 Civ. 5789 (DLC), 1998 U.S. Dist. LEXIS 15059, at *5 (S.D.N.Y. Sept. 17, 1998) (requiring plaintiff to file a $50,000 bond for potential costs); *Bressler v. Liebman*, No. 96 Civ. 9310 (LAP), 1997 U.S. Dist. LEXIS 11963 at *26 (S.D.N.Y. Aug. 14, 1997) (ordering dismissal of plaintiff's action unless, within five days, plaintiff posts a $50,000 bond as security for defendants' fees and costs).

Various factors are considered in deciding whether to impose a costs bond such as ability to pay, presence within the United States, merit of the underlying claims, extent and scope of discovery, and compliance with past court orders.  *Herbstein v. Bruetman*, 141 F.R.D. 246, 247 (S.D.N.Y. 1992).  Cases addressing the issue of security for costs typically focus on plaintiffs

---

[11] As noted above, Judge Lawrence ordered Johnson to post a $5,000 cash costs bond within 14 days of his ruling and yet Johnson allowed the case to be dismissed for his failure to comply.

domiciled outside of the forum jurisdiction who are without attachable assets to satisfy a potential award of costs and fees. *See, e.g., Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33, 39 (S.D.N.Y. 1989) (ordering a $20,000 bond where the plaintiff could not identify assets that could satisfy a potential award of costs and fees); *Oilex A.G. v. Mitsui & Co. (U.S.A.)*, 669 F. Supp. 85, 88 (S.D.N.Y. 1987) (ordering plaintiff, out of business or lacking assets, to post a $25,000 bond); *Knight v. Yerkes and Assocs., Inc.*, 675 F. Supp. 139, 142 (S.D.N.Y. 1987) (requiring $15,000 security for costs after finding that the property of the plaintiff, a resident of Thailand, had already been subject of attachment proceedings and if defendant prevailed, collection of costs would prove difficult); *Atlanta Shipping Corp. v. Chem. Bank*, 631 F. Supp. 335, 354 (S.D.N.Y. 1986), *aff'd*, 818 F.2d 240 (2d Cir. 1987) (ordering plaintiff, a Liberian corporation and a debtor in bankruptcy without reachable assets, to post a $10,000 bond in its action to recover unpaid judgments); *Gudmundsson v Julies Aircraft Serv.*, 2004 U.S. Dist. LEXIS 34268 at *24 (DC New Mex. 2004) (ordering plaintiff airplane crash victims to post a $20,000 costs bond for security).

In addition to the foregoing, bad faith conduct justifies forcing a party to post a bond as a condition of continuing to litigate. The first category involves cases, as here, where the litigant has repeatedly advanced similar claims that were previously dismissed.[12] Similarly, a substantial bond may be required when the court determines that it will likely award attorney

---

[12] *See Miller v. Town of Suffield*, 249 F.2d 16, 16 (2d Cir. 1957) (noting plaintiff's history of pursuing "vague charges ... lack[ing] substance and substantiation" against defendants); *Klein v. Spear, Leeds, & Kellogg*, 306 F. Supp. 743, 752 (S.D.N.Y. 1969) (citing plaintiff's "litigious nature" as justification for requiring security for costs).

12

fees based on the plaintiff's demonstrated bad faith in pursuing the action.[13] In *Bressler v. Liebman*, No. 96 Civ. 9310 (LAP) 1997 U.S. Dist. LEXIS 11963, *supra*, a substantial bond was required after the court observed that plaintiff's claims were previously rejected in state court. *See id*. at *21. Such is the case here.

The second category of bad faith cases justifying a costs bond involves misconduct in disobeying court orders. Courts will impose a security bond when the plaintiff has misbehaved in existing or prior litigation.[14]

Court orders of security for costs also varies depending on the court's opinion regarding litigation expense factors such as the extent of discovery, the general complexity of the litigation, and whether the litigation will involve extensive travel.[15] Defending this case would involve all three types of litigation expenses.

---

[13] *See Bressler v. Liebman*, No. 96 Civ. 9310 (LAP), 1997 U.S. Dist. LEXIS 11963 at *20-22 (S.D.N.Y. 1997) (discussing instances of the plaintiff's bad faith leading to the imposition of a security bond including attorney fees); *Tri-Star Pictures, Inc. v. Kurt Unger*, 32 F. Supp. 2d 144, 148 (S.D.N.Y. 1999) ("It is also proper to require the posting of a bond... when a party has engaged in a course of 'vexatious' conduct throughout a litigation."); *Haberman v. Tobin*, No. 74 Civ. 5740 (RWS), 1981 U.S. Dist. LEXIS 11358, (S.D.N.Y. Mar. 4, 1981) (holding that posting of a bond is necessary to protect the defendant "based on the general history of [plaintiffs] conduct throughout this litigation" which was characterized by the court as "vexatious").

[14] *See, e.g., Selletti v. Carey*, 173 F.3d 104, 106 (2d Cir. 1999) (justifying a security bond when the plaintiff violated the court's discovery orders); *Haberman*, 626 F.2d at 1101 (dismissing action of plaintiff who repeatedly disregarded orders from the court); *Herbstein v. Bruetman*, 141 F.R.D. 246, 247 (S.D.N.Y. 1992) (stating that, as a result of the defendants' failure to comply with court orders and the existence of a prior default judgment against the defendants, it was appropriate to require the defendants to a post security for costs of defending against a motion for summary judgment); *Argonaut Ins. Co. v. Goepfert*, No. 76 Civ. 802 (CHT), 1980 U.S. Dist. LEXIS 13284, at *15 (S.D.N.Y. Aug. 26, 1980) (citing the dilatory tactics engaged in by the third-party plaintiffs as one of the grounds for requiring security for costs).

[15] *See Fisch v. Fidelcor Bus. Credit Corp*., No. 91 Civ. 5047 (TPG), 1994 U.S. Dist. LEXIS 3419, at *5 (S.D.N.Y. Mar. 23, 1994) ("[T]he multi-million dollar demand for damages, together with the nature of the issues, requires defendant to engage in extensive discovery in order to defend the case .... [Therefore], the court decides that plaintiffs should be required to post a bond or other security in the amount of

The foregoing authorities apply across the board to Johnson. One would have to sue him in Vancouver, BC, Canada, at enormous cost and expense in order to recover costs or fees—that is, assuming one could even find him to serve him. Given that Johnson is a foreign national, not just a resident of another state and not a foreign corporation, and has yet to do what Judge Lawrence ordered, not to mention his failure to try and comply with Rule 45 in his Utah probate action, this lawsuit is but a third clumsy strike suit, a fishing expedition to see if any signatures on transfer records do not exactly match up, and whether Johnson can then obtain a handwriting expert to say that. Knowing where this case is headed if it is not dismissed, specifically, that SRTC's counsel may have to eventually travel to Vancouver, BC, Canada, and Mexico to take depositions and also spend money to locate and depose material witnesses, the Court, if it denies the Motion to Dismiss, should impose a large cash costs bond on Johnson of no less than $25,000.

## **CONCLUSION**

Based on the foregoing, this case should be dismissed for Johnson's abject failure and refusal, in over a year, to comply with Judge Lawrence's R&O and in derogation thereof, to continue to sue and harass SRTC but a third time when he knows he lacks standing.

---

$10,000...."); *Oilex A.G. v. Mitsui & Co.* (U.S.A.), 669 F. Supp. 85, 88 (S.D.N.Y. 1987) (explaining that costs would include extensive discovery in foreign countries, and the need to translate evidence into English; ordering plaintiff to post security in the amount of $25,000); *Knight*, 675 F. Supp. at 142 (noting the substantial number of depositions that will likely take place); *Burke v. Central-Ill. Sec. Corp.*, 9 F.RD. 426, 430 (D. Del. 1949) ("[I]ncreased costs involved in discovery procedure, depositions and other matters may increase the usual former amount of cost bonds if the original purpose of such bonds, viz., actual security for costs, is to be preserved.").

Alternatively, the Court should dismiss the Complaint on jurisdictional grounds simply because no facts are alleged in the Complaint showing how or why the Estate meets the $75,000 threshold in damages.  That is to say, Johnson's claims are entirely speculative.

If the Court denies this motion and because Johnson appears to be an imposter and professional suer of stock transfer agents and is pursuing this action in an effort to make false claims on SRTC's E & O Insurance Policy, this Court should require Johnson to post cash costs bond of no less than $25,000 to cover Defendant's costs of travel, the locating of witnesses, and the prospective taking of depositions in Vancouver, BC, Canada, and also Mexico.

Given that Johnson has actually had 3 years to provide proof that he has standing and has failed to do so, even going so far as to provide an irrelevant and preposterous Mexican notary document which simply publicizes, by announcement in a Mexican newspaper, documents Johnson brought with him to the notary in Mexico, the Court should consider awarding SRTC its fees and costs under *Utah Code Ann.* § 78B-5-825 and 28 U.S.C. § 1927.  SRTC should not have had to incur the fees and costs necessary to file this Motion.

DATED this 20th day of October, 2022.

MABEY & COOMBS, L.C.

/s/ *J. Michael Coombs*
J. Michael Coombs
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of October, 2022, I caused a true and correct copy of the foregoing, including Counsel's Supporting Declaration, and all attendant exhibits, to be served on those counsel identified below via email as per the Court's electronic filing system:

*Andrew G. Deiss*
*David Ferguson*
*Corey Riley*
*DEISS LAW, P.C.*
*10 West 100 South, Suite 700*
*Salt Lake City, Utah 84101*
*deiss@deisslaw.com*
*dferguson@deisslaw.com*
*criley@deisslaw.com*

/s/ *J. Michael Coombs*
*J. Michael Coombs*

16