MABEY & COOMBS, L.C.
J. Michael Coombs (Bar No. 3639)
4568 So. Highland Drive, Suite 290
Salt Lake City, UT  84117-4237
Telephone: (801) 467-2779
Facsimile: (801) 812-8469
Email address:  jmcoombs77@gmail.com

*Attorneys for Defendant Standard Registrar &
Transfer Co., Inc.*

### IN AND BEFORE THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT RYAN JOHNSON, as Executor and Trustee of the Estate of Terrence Blair Hunter,<br><br>Plaintiff,<br><br>vs.<br><br>STANDARD REGISTRAR & TRANSFER COMPANY, INC., a Utah corporation,<br><br>Defendant. | **REPLY MEMORANDUM SUPPORTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:22-cv-591-JNP<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Dustin Pead |

Defendant Standard Registrar & Transfer Co., Inc. ("Defendant" or "SRTC) hereby replies to its Rules 12(b)(1) and 12(b)(6) motion to dismiss.  In lieu of including a rebuttal affidavit to contest factual averments in Defendant SRTC's Motion to Dismiss, averments supported by a Declaration of SRTC's counsel, Johnson instead incorporates by reference his response to SRTC's outstanding motion for sanctions.  For that reason, SRTC hereby also incorporates by reference its Sanctions Motion on file herein, including its reply memo.

### Reply Point I—JOHNSON CONTENDS THAT HE IS ENTITLED TO IGNORE JUDGE LAWRENCE'S SEPT. 20, 2021, RULING AND ORDER (R&O).

Johnson contends that because Judge Lawrence did not forever bar him from having the ability to act as the personal representative of the deceased Canadian's estate in Utah and because the case was later dismissed, Johnson has the discretion to ignore Judge Lawrence's Ruling and Order (R&O).[1] Opp., p. 3. He provides no authority for this position. At the same time, whether intentional or not, he recites the incorrect provision of the R&O. *Id*. The pertinent portion of Judge Lawrence's R&O at issue in this litigation is this:

> 3. The Court imposes the following ORDER upon the plaintiff, in order to demonstrate that the plaintiff has the appropriate power and authority to legally act on behalf of the Estate and bring these claims. Within 90 days (or a reasonable time thereafter if 90 days is not feasible), Plaintiff must file a brief with the Court supporting Mr. Johnson's power and authority to act on behalf of the Estate. Ideally, that would include an Order from a Court (in Mexico or Canada) providing the basis for that authority. If, for whatever reason, that is not possible, then Plaintiff must file a reasonable substitute which should include either: i) opinion letters from law firms in Canada or Mexico upon which this Court may rely, and/or ii) a legal brief with argument and citation to Canadian, Mexican and/or international law reflecting Mr. Johnson's authority to act under these circumstances.[2]

Given this ¶ 3 of the R&O, Johnson does acknowledge that "Judge Lawrence also ordered Johnson to provide supplemental authority to establish Johnson's *authority to act on behalf of the estate*," but he claims that "that portion of the order had nothing to do with whether Johnson

---

[1] In other words, he believes he has free rein to forum shop indefinitely.

[2] *See* Statement of Facts, ¶ 4, p. 4, SRTC's Motion to Dismiss and Exhibit B thereto.

survived a 12(b) motion." Opp., p. 4, top. This statement makes no sense. Whether Judge Lawrence granted the entirety of the motion giving rise to the R&O is irrelevant to ¶ 3 of the R&O quoted above. Judge Lawrence ruled that the Mexican notary newspaper announcement document Johnson brought with him to Utah as a lawful basis for his standing is insufficient to establish that Johnson—using his own words—has "*legal authority to act on behalf of the estate*" here in Utah. *Id*. This is what Judge Lawrence held but Johnson simply refuses to obey or honor it, preferring instead to forum shop for another judge and argue that the R&O does not apply.[3]

      Johnson proceeds to argue that SRTC mischaracterizes the Law of the Case Doctrine. Opp., p. 4. But this criticism is invalid. The holding of *Build, Inc.*, 428 P.2d at 999 cited in note 1 of SRTC's motion, is that a successor judge has authority to revisit a previous judge's decision where it appears to the second judge that the first ruling was "clearly erroneous" and will infect the subsequent proceedings with error. Accordingly, for this Court to overrule ¶ 3 of the R&O, this Court would need to find such determination by Judge Lawrence "clearly erroneous." SRTC's point is that that would be difficult to do.

      But Johnson goes further and argues that the Doctrine does not apply here because this case and Judge Lawrence's case are different cases. Opp., p. 5. But if that were true, no ruling in a lawsuit could ever apply to a subsequent related lawsuit involving the same parties and issues. Collateral estoppel would be undermined as well. Johnson cites no authority for such a proposition. If what Johnson argues here were true, one could defeat the Law of the Case Doctrine by letting a case get dismissed on dilatory grounds and then plaintiff could shop for a

---

[3] Johnson cites no authority that ¶ 3 of the R&O quoted above does not apply to him nor is there any reason it would not. If that were true, Johnson could indefinitely file other lawsuits in reliance on the Mexican notary document until he finds a judge willing to accept it, something he seeks to achieve here.

new judge *ad infinitum* until he eventually drew the judge who would give him the result he is looking for.  Forum shopping as a prohibition would have no meaning if a person could do that, over and over, with impunity.  Yet that is what Johnson argues here by contending that Judge Lawrence's R&O does not apply to him.  Is it any wonder why Johnson keeps filing lawsuits in which he ignores prior court rulings?[4]

Lastly, Johnson argues that SRTC is seeking a different result than what Judge Lawrence ruled.  Opp., p. 5.  Again, this makes no sense.  To the contrary, not only is SRTC <u>not</u> seeking a different result from Judge Lawrence's R&O, SRTC is seeking to *enforce* Judge Lawrence's R&O, specifically, ¶ 3 thereof requiring Johnson to comply with Canadian and international law in order to demonstrate his lawful authority in Utah.[5]  This is not to ignore that by letting the Judge Lawrence case get dismissed due to Johnson's refusal to file a costs bond and then hurrying to petition the Utah probate court for a probate order in which he concealed Judge Lawrence's R&O, Johnson committed a brazen fraud on the Utah Probate Court.  *Cf.*, Opp., p. 5.  The fact is that Canadian national, Johnson, and his Canadian national decedent, Hunter, have zero connection to this jurisdiction.  None whatsoever.  *See* p. 2, SRTC's Reply Memo Supporting Sanctions.  Johnson's sole objective since his first letter to SRTC less than one month after Hunter died on September 3, 2019, is only to obtain documents by which, with the help of his

---

[4] *See* Point C, p. 7, SRTC's Reply Memo in Support of Sanctions (discussing forum shopping).

[5] The absurdity of Johnson's position is exemplified by the fact that he could have gone to any country in the entire world to get something identical to the Mexican notary newspaper announcement document that he has produced here in Utah as the basis for his legal authority to act as the Hunter estate's personal representative and if so, he would be arguing the exact same thing that he has argued over the last 1½ years.  Significantly, as SRTC points out in note 4, p. 6 of its Reply to its Sanctions Motion, Johnson's own Mexican counsel advised him that he doubted a Mexican notary had power or authority to process a "succession" in Mexico and yet Johnson ignored that advice as well and relied on a Mexican notary.

handwriting experts, he might make out a fraudulent or wrongful [stock certificate] endorsement case. In short, he seeks to discover his way into a fraud case without complying with Rule 9(b).

### Reply Point II—JOHNSON FAILS TO REBUT THE CHARGE THAT HIS COMPLAINT LACKS SUFFICIENT FACTS TO SHOW AT LEAST $75,000 IN DAMAGES. AT THE SAME TIME, HE ADMITS HE HAS NO IDEA WHAT THE DAMAGES MIGHT BE. HIS OPPOSITION REVEALS NOTHING BUT AN EFFORT TO DISCOVER HIS WAY INTO FRAUDULENT ENDORSEMENT CASE.

Johnson alleges in ¶ 21 his Complaint that 630,000 shares of the decedent's stocks were transferred from Mexico while he was in a Canadian hospital "around August and September 2019" (having died on September 3, 2019). Yet ¶ 10 of the same Complaint alleges that the decedent travelled from Mexico to Vancouver, Canada, in "late-August 2019." There is no reason to believe that Hunter did not cause the transfers from Mexico before he left the country, never to return. Surely it would have been difficult for him to do such paperwork later on from a hospital. "Non-routine" stock transfers can take as much as 30 days under the *Code of Federal Regulations*. Accordingly, if there is something fraudulent alleged here, we do not know what it is. Johnson's pleading thus fails to comply with Rule 9(b), *Fed. R. Civ. Pro*. and his Complaint should be dismissed on that basis. To be sure, Johnson alleges no facts whatsoever to support the allegation in ¶ 21 that the alleged stock transfers were not authorized by Hunter before he left Mexico in "late-August 2019." If they were sent by Hunter or someone he authorized to send them, they were indeed authorized. No facts to the contrary are alleged.

Paragraphs 17-20 of Johnson's Complaint allege that the decedent, Hunter, transferred shares starting in 2016 thru 2019 and that "these transfers were not done by Hunter or authorized by Hunter." Similarly, there are no facts alleged to show that this is the least true. How on earth would Johnson know whether Hunter authorized transfers of his property going back to 2016?

Once again, if there is some kind of fraud here, Johnson fails to identify it in conformity with the pleading requirements Rule 9(b).

Ignoring Johnson's failure to comply with Rule 9(b), there is nothing in Johnson's Complaint to demonstrate that the actions alleged in ¶'s 17 thru 21, even if true, give rise to as much as $75,000 in damages. How can one reach that conclusion from the face of the Complaint? One cannot.

While Johnson tries to distinguish but four of several cases cited by SRTC to conclude that his claims lack the requisite jurisdictional amount, the fact is that his Complaint is entirely speculative, failing to show $75,000 or any other amount in potential damages on its face. For example, Johnson lacks one single record to substantiate what he alleges. His entire Complaint rests on the prospect of him getting his hands on stock transfer records and then getting his handwriting expert to claim that Hunter's endorsements are forgeries. As it is, such claims, on their face, without some sort of proof, do not allege facts sufficient to convince a court that the recoverable damages will bear a reasonable relation to the $75,000 jurisdictional floor. *See* Def's Motion to Dismiss, Point II, pp. 9-10. For this reason, the Complaint should not only be dismissed for failure to meet the jurisdictional diversity requirement, but it should also be dismissed under Rule 9(b) for failing to plead fraud (fraudulent endorsement) with particularity. The law is clear that Johnson should not be allowed to discover his way into a fraud case on the basis of an entirely speculative pleading, one of the express purposes of Rule 9(b). *United States v. ex rel. Grubbs*, 565 F.3d 180, 185, 2009 U.S. App. LEXIS 7135 (5th Cir. 2009) (purpose of gatekeeper Rule 9(b) is to weed out meritless fraud claims); *Resler v. Financial Group, Inc.*, 668

F. Supp. 1454, 1458 (DC Okla. 1985) (Rule 9(b) prevents a groundless fraud claim from being used to discover a wrong).

**Reply Point III**—JOHNSON, A CANADIAN NATIONAL WHO HAS REPEATEDLY ABUSED OUR LEGAL SYSTEM AND WHO HAS NO TIES TO UTAH, FAILS TO REBUT THE CHARGE THAT THE LAW REQUIRES HIM TO POST A SUBSTANTIAL CASH COSTS BOND TO PROCEED.

While Johnson argues he should not have to post a costs bond because SRTC would not be entitled to recover costs or fees from him (*i.e.*, an apparent rationale for his forum shopping), Johnson ignores the law here. This case meets all the legal criteria for imposition of a large cash costs bond. *See* Point III, Motion to Dismiss, p. 11-14. Looking at the first four grounds for imposing a large costs bond, Johnson does not appear to have an ability to pay costs, or he would not have dropped the Judge Lawrence case over the $5,000 cash bond he was ordered to post. Secondly, he has no presence here, not just in Utah but the United States. Thus, he has no attachable assets here. Third, his claims have no underlying factual basis. They are speculative and conclusory. His complaint contains no factual basis to allege or conclude that Hunter's stock transfers going back to 2016 were never authorized. Johnson would have no way of knowing that when the only person who does know is dead. Fourth, Johnson has a history of failing to comply with past Utah court orders. *Id.* at p. 11.

In addition to the preceding 4 reasons justifying a costs bond, Johnson fails to rebut the fact that bad faith conduct in litigation also justifies forcing a party to post a bond as a condition of continuing to litigate. *Id.* at p. 12, bott. For example, Johnson has previously advanced nearly identical claims previously dismissed by Judge Lawrence and then sought a Utah probate action

in bad faith, all in derogation of Judge Lawrence's R&O. Secondly, misconduct in disobeying court orders in prior litigation also justifies imposition of a costs bond. *Id.* at p. 13, top.

Finally, Johnson fails to rebut the fact that this case will require extensive discovery, it will be complex, and the litigation will involve extensive travel, namely, to Canada and Mexico. *Id*. SRTC's motion makes clear that these three factors also weigh heavily in favor of requiring a large cash costs bond. In sum, Johnson's Opposition does not undermine any of the several legal grounds for imposing a large cash costs bond upon him in this case of at least $25,000.

## SUMMARY AND CONCLUSION

There is no evidence that the deceased, Hunter, ever resided in Mexico. Johnson's own Mexican attorney expressed in an email to Johnson in February 2020 that Hunter seemed to have no assets there and that Johnson, in any event, should not rely on a notary to process a "succession" in Mexico.[6] Yet Johnson ignored this advice, ran down to Mexico from Canada anyway to have a Mexican notary create a document announcing publication of Johnson's alleged personal representative status in a Mexican newspaper. Johnson then used that document with its fancy, colored stamps as the basis for bringing a fraudulent or wrongful endorsement lawsuit here in Utah on behalf of the Canadian estate, claiming an astonishing $200 MILLION in damages. Under these same facts, Johnson could just as easily have gotten the same publication announcement document from any other country in the world, and it would still lack the same legal significance here in Utah. This underscores the absurdity of Johnson's legal status and standing.

---

[6] *See* Exhibit A to SRTC's Reply Memorandum in Support of Sanctions, a copy of such email.

Judge Lawrence ordered Johnson to do certain things if he wanted to have appropriate legal authority to act as the personal representative of the Hunter estate in Utah and prosecute claims on behalf of the estate. But Johnson refuses to acknowledge the ruling just as he refused to acknowledge the advice of his Mexican lawyer, electing instead to try and shop his Mexican notary newspaper announcement document to two other Utah judges. He is now on his third Utah lawyer and his third Utah judge or court for such purpose—all in 1½ years.

Based on ¶ 3 of Judge Lawrence's R&O, this Court should dismiss this case under Rule 12(b)(6) on account of Johnson's inability in over a year to prove his legal status and lawfully act as personal representative of the Canadian estate in Utah.

In addition, Johnson's entire theory of wrongful or fraudulent endorsement is wishful thinking. He offers nothing to back up his allegations. They are entirely speculative if not wholly fabricated. Speculative damages do not give rise to $75,000 in damages, the jurisdictional limit in this case. Moreover, because Johnson's basis for coming up with $75,000 in damages is sheer speculation and conjecture, this case should also be dismissed under Rule 9(b) on account of Johnson's failure to allege fraud or fraudulent endorsement with particularity. *Who alleges fraudulent endorsement of anything without already having the signatures to compare?*

Lastly, if this case is not dismissed for Johnson's lack of standing to act in the appropriate legal capacity, Johnson, a Canadian national who does not live here and has no connection to Utah, and if he truly believes his case has merit, should be ordered to post no less than a $25,000 cash costs bond for the several reasons set forth in SRTC's motion and as summarized above.

DATED this 1st day of December, 2022.

MABEY & COOMBS, L.C.


/s/ *J. Michael Coombs*
J. Michael Coombs
*Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2022, the undersigned caused a true and correct copy of the foregoing **REPLY MEMORANDUM SUPPORTING DEFENDANT'S MOTION TO DISMISS**, to be served on those identified below via email as per the court's electronic filing system:

*Andrew G. Deiss*
*David Ferguson*
*Corey Riley*
*DEISS LAW, P.C.*
*10 West 100 South, Suite 700*
*Salt Lake City, Utah 84101*
*deiss@deisslaw.com*
*dferguson@deisslaw.com*
*criley@deisslaw.com*


 */s/ J. Michael Coombs*
*J. Michael Coombs*