MABEY & COOMBS, L.C.
J. Michael Coombs (Bar No. 3639)
4568 S. Highland Drive, Suite 290
Salt Lake City, UT 84117-4237
Telephone: (801) 467-2779
Facsimile: (801) 812-8469
Email address: jmcoombs77@gmail.com

*Attorneys for Defendant Standard Registrar &
Transfer Co., Inc.*

# IN AND BEFORE THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT RYAN JOHNSON, as Executor and Trustee of the Estate of Terrence Blair Hunter,<br><br>Plaintiff,<br><br>vs.<br><br>STANDARD REGISTRAR & TRANSFER COMPANY, INC., a Utah corporation,<br><br>Defendant. | **BRIEF OF DEFENDANT AS PER THE COURT'S JUNE 8, 2023, MINUTE ENTRY RULING**<br><br>Case No. 2:22-cv-591-DAO<br><br>Judge Jill Parrish |

Defendant Standard Registrar & Transfer Co., Inc. ("Defendant" or "SRTC"), a Utah corporation, hereby submits its brief on the insufficiency and invalidity of the Mexican probate documents submitted by Plaintiff Johnson as ordered by the Court on June 8, 2023.

SRTC objects to any attempt to shift the burden to it to show that Johnson's Mexican probate newspaper notice is insufficient to demonstrate his standing. This is because proof of standing is Johnson's burden under the law of the Tenth Circuit, not SRTC's.[1]

---

[1] *Brown v. Buhman*, 822 F.3d 1151, 1164, 2016 U.S. App. LEXIS 6571 at **27-28 (10th Cir. 2016) (burden is on plaintiff to establish standing and federal courts need to be satisfied that plaintiff's invocation of federal-court jurisdiction is justified).

Given that the record is replete with the evidentiary basis for the facts in issue and given that SRTC's outstanding motions are supported by unrebutted declarations, SRTC will not take up the limited space in this Memo re-reciting to the record.

**Factual Recap**

All Johnson has ever filed in this or the previous two Utah lawsuits he has brought is a Mexican notary newspaper publication notice which merely identifies the Canadian documents that Johnson took with him to Mexico from Vancouver, BC, immediately after the deceased, Mr. Hunter, a Canadian citizen and resident, died. *See* Exhibit B, Complaint. This newspaper notice document sets forth that Hunter signed a Last Will and Testament in Vancouver on September 1, 2019, but two days before he died on September 3, 2019, and that he died in Richmond, British Columbia, not Mexico.[2] The Death Certificate identifies Hunter, a Canadian national, as a *resident* of Vancouver, BC, not Mexico. *See* **Exhibit A**. The briefing is closed on SRTC's motions. At no time during Johnson's prosecution of his three Utah lawsuits has Johnson shown compliance with Canadian or Mexican law. Johnson is using the Mexican notary newspaper notice with its seeming officialness as the basis for bringing a fraudulent or wrongful endorsement lawsuit here on behalf of the Canadian estate, having claimed an astonishing $200 MILLION in damages in the Judge Lawrence action that was dismissed.[3]

---

[2] In Johnson's Affidavit filed in Opposition to SRTC's motion filed in the state court probate action, Docket Entry No. 20, Johnson attests that Hunter died of cancer in Canada. In ¶'s 11-13 of the Complaint on file herein, Johnson further alleges that Hunter was admitted to a British Columbia hospital in August and that Hunter signed his Last Will and Testament there on September 1, 2019, dying less than 48 hours later. If so, Hunter surely would have been on morphine or other heavy narcotics on the day he signed his Last Will and Testament, thereby depriving him of testamentary capacity to appoint Johnson. This is an issue that should be resolved by a Canadian Probate Court. *See* Point I below.

[3] Johnson sought $200 MILLION in damages in that case without ever seeing any stock transfer records on which to base his claims. In his Complaint here, he chose not to specify his alleged damages.

**Point I**—MEXICO HAS NO JURISDICTION TO PROBATE A CANADIAN ESTATE WHEN THE WILL WAS MADE IN CANADA AND JOHNSON PROVIDES NO EVIDENCE THAT THE DECEASED WAS A PERMANENT RESIDENT OF MEXICO. ACCORDINGLY, NO BASIS EXISTS FOR A UTAH COURT TO RECOGNIZE THE MEXICAN NOTARY NOTICE AS A VALID FOREIGN PERSONAL REPRSENTATIVE APPOINTMENT.   THE MEXICAN NEWSPAPER NOTICE IS ALSO NULL AND VOID UNDER MEXICAN LAW.

A.  **A Canadian probate court must first validate the Canadian deceased's Last Will and Testament before a Mexican judge or notary can act on it.**  Article 15 of the *Civil Code of Quintana Roo,* the Mexican state from where Johnson attempted to effectuate his foreign probate through a notary, provides: "The effects of legal transactions concluded abroad that must be executed in the territory of the State, shall be governed by federal laws." [4]  *See* **Exhibit B** hereto, a full copy of the *Quintana Roo Civil Code* in Spanish.  Turning to the federal laws of Mexico as the state Article quoted above requires, Article 1593 of the *Federal Civil Code of Mexico*, Chapter VIII thereof titled **Foreign-Country Made Testament**, provides:

> Wills made in a foreign country will have effect in the Federal District when they have been formulated in accordance with the laws of the country in which they are granted.[5]

What this means is that that wills granted abroad that will produce effects in Mexico are conditional on such wills having been validated in accordance with the laws of the country where they were granted, in this case, Canada.  Because the Mexican notary notice, Ex. B to Johnson's Complaint, contains no Canadian authority validation, Mexican law requires that Hunter's Will be

---

[4] Two Mexican attorneys, one in Chihuahua and another in Ensenada, Baha, with whom STRT consulted, translated Article 15 into English.

[5] *See* the full English translation of the *Federal Code of Mexico*, including Article 1593, at https://www.global-regulation.com/translation/mexico/560097/federal-civil-code.html

first probated in Canada to see that it was "formulated" in accordance with Canadian law. Only after a Canadian judge has made that determination can a Mexican judge or notary do anything with it. This is consistent with an Estate News pronouncement of a British Columbia, Canada, law firm, Fulton & Co., LLC, specializing in estates and probate:

> If you rely on a Canadian Will alone, your estate essentially needs to go through a double-probate process. Although it may be legally valid in Mexico, a Canadian Will still needs to be officially recognized and acknowledged by the Mexican courts. Only after your Will has been probated and legally recognized in Canada can your heirs start the Mexican recognition process, which is expensive and can take upwards of 6 to 9 months, all in addition to the time and expense of the Canadian probate process.

https://www.fultonco.com/2019/11/estate-news-what-happens-down-in-mexico/#:~:text=If%20you%20rely%20on%20a,acknowledged%20by%20the%20Mexican%20courts

      B.     **<u>Even if a Canadian probate court validated the Will, Johnson provides no evidence that Hunter was a permanent resident of Cancun, Quintana Roo, Mexico, and therefore, Mexican law prohibits processing the "succession" of the Canadian estate</u>**. In Mexico, federal substantive law applies to the authenticity and validation of a foreign will, but state law applies in any probate proceeding. Article 157, § V of the *Quintana Roo Code of Civil Procedure* establishes that the competent judge in hereditary proceedings is the judge in whose jurisdiction the author of the inheritance had as his last domicile. *See* **Exhibit C** hereto, titled Annex I, the English translation of Articles 155 to 157; *see also* **Exhibit D** hereto, a full copy of the *Quintana Roo Code of Civil Procedure* in Spanish. To clarify the concept of domicile, Article 552 of *Quintana Roo Civil Code*, **Exhibit B** hereto, establishes that the domicile of a natural person *is the place where he resides for the purpose of establishing himself in it*. In the absence of this place, it will be the domicile where the person has the main seat of his business. In

Mexico, the concept of domicile is essentially identical in all the civil codes of the states and in the Federal Civil Code. See **Exhibit E** hereto, titled Annex II, the English translation of Articles 552 to 554 of the *Civil Code of Quintana Roo* and Article 29 of *the Mexican Federal Civil Code*.[6] Therefore, if Hunter was not domiciled in Cancun for the purpose of permanently residing there, then a judge in Quintana Roo is not competent for Hunter's probate proceedings. Domicile means living there more than six months of the year; it means that Cancun, Quintana Roo, was Hunter's permanent residence. It also means paying Mexican income and other taxes, owning property there, including personalty.[7] To prove that a foreigner settled in Mexico for the purpose of residing there, in addition to an immigration permit, proof of having a purchased or rented a house to live in Mexico, proof of public services (electricity, gas, water, telephone bills), including Mexican identifications with an address, are required. Here, Johnson has offered nothing to show that Hunter was permanently domiciled in Cancun, Quintana Roo. In fact, the evidence is to the contrary. Hunter's Death Certificate identifies Vancouver, BC, Canada, as his residence, along with a Canadian passport. See **Exhibit A** hereto, a copy of both. In sum, if Cancun, Quintana Roo, was not Hunter's permanent domicile, a judge or notary of Quintana Roo lacked jurisdiction to process his Last Will and Testament *even if it had been probated first in Canada*.[8] [*Emphasis in italics added*.]

---

[6] **Exhibit E**'s *Civil Code* references are found in **Exhibit B**, the full copy of the *Civil Code*, and its Article 29 reference is found in footnote 5 above, the online citation to the *Mexican Federal Code* in English.

[7] Johnson's own Mexican attorney expressed in an email to Johnson in February 2020 that Hunter appeared to have no assets in Mexico and that Johnson should not rely on a notary to process the "succession" in Mexico. *See* note 4, p. 6, including Exhibit A, to SRTC's Reply Memorandum in Support of Sanctions, a copy of such email to Johnson from his own Mexican counsel.

[8] Mexican counsel that SRTC's counsel has consulted with have informed him that in their opinion, Johnson probably went to a notary because a notary is less likely to question Hunter's permanent domicile and would take Johnson's word for it. A Mexican judge would not. He or she would delve into that question first.

  **C.** **Under Mexican law, anything done before "an incompetent judge" (which includes a judge or notary without authority) is automatically null and void and therefore, Johnson's Mexican notary notice is null and void.**  Article 155 of the *Quintana Roo Code of Civil Procedure* provides that everything that has been done before an incompetent judge is null and void.  In addition, Article 156 states that such nullity is automatic.  *See* **Exhibit C**, Annex I.  This means that if the Will was not first probated in Canada and it was never established by a Mexican judge that Hunter was a permanent resident or domiciliary of Cancun, no Mexican judge or notary had jurisdiction or other authority to act on the "succession" process initiated by Johnson.  Assuming for argument's sake that Johnson had probated the estate in Canada and the domicile of the deceased was in Cancun, only a judge of Quintana Roo was competent to recognize the Will and the rights of the heirs and appointment of executor.  Only after completion of that first part of the "succession" process, could it be entrusted to a notary in Quintana Roo for the subsequent phase of the formation of inventories, appraisals, and partition of the inheritance.  *See* Article 728 of the *Quintana Roo Code of Civil Procedure*.[9]  As stated at the end of Article 728, however, there can be no dispute or controversy between the interested parties to a probate or

---

[9] Article 728 of the *Quintana Roo Code of Civil Procedure* translated into English provides:

> Article 728.  Once the trial has begun and the heirs are of legal age, they may, after the recognition of their rights, entrust a notary with the preparation of inventories, appraisals, liquidation and partition of the inheritance, proceeding in all by common agreement, which shall be recorded in one or more minutes.  The interested parties may agree that the agreements are taken by majority vote, which will always be of individuals.  In the absence of such an agreement, the opposition of a party shall be heard incidentally before the judge who prevented it.

6

it goes back before a judge.[10]  In this case, there is no evidence that Johnson gave notice to any possible disputing Hunter heirs or interested persons, including creditors.[11]

In sum, for a foreign will to be probated in Mexico it must first be validated that the will has been granted in compliance with the laws of the country in which it was granted. Subsequently, in the event the deceased had had a permanent domicile in Cancun, a probate trial should have been initiated first before a judge in Quintana Roo, since only a Mexican judge can recognize the domestication of the judicial records of the foreign court.

**Point II—AS PER MEXICAN LAW, JOHNSON FAILED TO INITIATE A PROBATE OF THE CANADIAN WILL IN CANADA.  JOHNSON, HIMSELF A VANCOUVER, BC, RESIDENT, THUS FAILED TO OBTAIN A FORMAL APPOINTMENT FROM THE ONLY JURISDICTION THAT COULD GIVE HIM ONE.**

British Columbia's probate code, called *the Wills, Estate and Succession Act, S.B.C. 2009*, is found at https://www.bclaws.gov.bc.ca/civix/document/id/complete/statreg/09013_01.[12]

Sections 101, titled **Application,** and 129, titled **Grant of Probate or Administration,** give the jurisdictional basis to initiate a probate in BC.  There is no reason to believe that Hunter, a Canadian whose death certificate says he resided in British Columbia at the time of death, the fact that he created his Will in Canada using Canadian witnesses, and then died there two days later, would not invoke the original jurisdiction of a Canadian probate court.  Yet

---

[10] This is also supported by Article 818 of the *Quintana Roo Code of Civil Procedure*.  See **Exhibit F** hereto, Annex III, the English translation of Articles 818 to 822 of the *Code of Civil Procedure of Quintana Roo* relating to notary processing, the full provision in Spanish of which constitutes **Exhibit D**.

[11] In *Doelle v. Bradley*, 784 P.2d 1176, 1178, 1989 Utah LEXIS 162 at **4, 124 Utah Adv. Rep. 20 (Utah 1989), the Utah Supreme Court upheld the trial court's finding that a California probate decree was not entitled to full faith and credit in Utah because proper notice of the California proceedings was not given to all concerned.  By avoiding probate in Canada, there is no evidence that Johnson gave proper notice to any relatives, creditors, or interested persons of the Canadian deceased as required under both Mexican and Canadian law.

[12] The Act was amended in 2020 but those amendments are not relevant to this case. https://www.leg.bc.ca/parliamentary-business/legislation-debates-proceedings/41st-parliament/5th-session/bills/third-reading/gov21-3

Johnson hurried down to Cancun, Quintana Roo, Mexico, and hired a Mexican notary to purport to probate the Canadian estate. Perhaps the reason that he elected not to initiate a probate in British Columbia is that British Columbia probate law requires giving notice to interested parties, which would include the deceased's relatives. *Id.* § 121. Section 122(b) further requires Johnson to publicly disclose the property of the deceased that passes to him, in this case, all of it. We can only surmise why Johnson elected to run to another country to initiate an alleged original "probate" and try and get himself formally appointed as personal representative there.

**Point III**—JOHNSON DOES **NOT** HAVE A VALID FOREIGN APPOINTMENT. HE THEREFORE LACKS STANDING TO ACT AS THE PERSONAL REPRESENTATIVE OF THE HUNTER ESTATE IN UTAH. MOREOVER, UTAH LACKS JURISDICTION OVER THE SUBJECT MATTER OF THIS CASE UNDER THE UTAH PROBATE CODE—SPECIFICALLY, THERE IS NO PROPERTY OF THE DECEDENT HERE OR LIKELY TO COME HERE NOR IS THERE ANY OTHER CONNECTION TO UTAH.

Only the lawful personal representative of an estate may assert claims belonging to the estate. *A.B. v. City of Woodland Park*, 174 F. Supp. 3d 1238 at *1246, 2016 U.S. Dist. LEXIS 41247 at **13 (DC Colo. 2016); *Pierucci v. Pierucci*, 331 P.3d 7 at *16, 2014 Utah App. LEXIS 167 (Utah App. 2014). That includes all claims in Johnson's Complaint. In *So. Utah Wilderness All. v. Kane City Commission*, 2021 UT 7 at ¶ 16, 2021 Utah LEXIS 8 at *7, 484 P.3d 1146, 2021 WL 728214 (Utah 2021), the Utah Supreme Court held,

> [S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties (citing *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808).

*Accord, Washington County Water Conservancy Dist. v. Morgan,* 2003 UT 58 at ¶ 6 n.2, 82 P.3d 1125 (Utah 2003); *Harris v. Springville City,* 712 P.2d 188, 190 (Utah 1986) ("[L]ack of standing

is jurisdictional."); *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (standing is necessary to invoke the court's jurisdiction).[13]

Johnson, a Canadian, seeks to obtain records from SRTC in order to discover his way into a lawsuit against SRTC for wrongful endorsement of stock certificates by the Canadian deceased. Yet the deceased had no connection to Utah. He did not live here, did not die here, was not a US or Utah citizen, did no business here, may have never set foot here, and maintained no assets here.[14] See In the Estate of Barrera, 2020 Tex. App. LEXIS 4055, 2020 WL 2715275 at p. *11 (Tex. App., 5th Dist., May 26, 2020) (an ancillary probate proceeding requires property in the state). Johnson has no evidence that any stock certificates belonging to the deceased and submitted to SRTC for transfer years ago were ever wrongfully endorsed. Johnson wants to see the endorsements and then with his stable of handwriting experts, pursue SRTC for damages on that theory. But to obtain any such records, he needs standing under the *Utah Probate Code* to act here as the personal representative of the foreign Hunter estate. He does not have it.

Under the Foreign Personal Representative provisions of the *Utah Probate Code*, Chapter 4 thereof, specifically, § 75-4-205, titled **Powers**, a personal representative of a foreign estate "may exercise as to assets in this state all powers of a local personal representative and maintain actions and proceedings in this state," if he or she has complied with § 75-4-204 of the *Utah Probate Code* titled **Proof of authority – Bond**. That provision, in turn, provides that if there is no local administration of the estate, "a domiciliary personal representative may file with the

---

[13] SRTC cites Utah state law because, in a diversity action, federal courts apply the substantive law of the forum state, including the choice of law rules. *Klaxon Co. v. Stentor Elec. Mf. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941), *cert. denied*, 316 U.S. 685, 62 S. Ct. 1284, 86 L. Ed. 1757 (1942); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008).

[14] The deceased's only connection to Utah was that while he was alive, he at one time owned stock in a public company whose stock transfer agent happened to be located in Utah.

court in this state in a county in which property belonging to the decedent is located, authenticated copies of his appointment and of any official bond he has given." Thus, for Johnson to be locally empowered as a lawful personal representative, he must first file authenticated copies of his appointment from the foreign jurisdiction that probated the estate, including proof of any official bond he has given. But Johnson has never been "appointed" by a foreign jurisdiction. And a formal appointment requires a court order.[15] Exhibit B to Johnson's Complaint is not an "appointment" under § 75-4-204. Under Utah law, "a personal representative's authority commences with his or her appointment and the issuance of letters of administration."[16] The Mexican newspaper notice is not an "appointment" signed by a duly authorized Mexican judge having jurisdiction over the Canadian estate. Given the absence of an appointment or Letters Testamentary issued by a foreign court having jurisdiction over the Hunter estate, Johnson has no authority to act as the personal representative of the Hunter estate in Utah. *Myelle v. American Cyanamid Co.*, 57 F.3d 411, 414, 1995 U.S. App. LEXIS 15505 at p. **7 (4th Cir. 1995) (wrongful death action by a foreign administratrix dismissed for failure to produce authenticated copies of foreign appointment and bond as required by law).

Of special significance here is also the fact that Johnson has not sought ancillary appointment in a Utah county where estate property of the decedent is located. *See* § 75-4-204 above; *see also In the Estate of Barrera*, *supra*. And that is because there is none. No Hunter estate assets are located here. Nor does Johnson allege that there are. SRTC, a mere stock transfer agent, does not hold any stock certificates owned by Hunter's estate. Any stock

---

[15] *See, e.g., Utah Code Ann.* § 75-3-402(1) titled **Formal testacy or appointment proceedings -- Petition – Contents** providing "Petitions for formal probate of a will, or for adjudication of intestacy with or without request for appointment of a personal representative, shall be directed to the court, request a judicial order after notice and hearing, and contain further statements as indicated in this section."

[16] *Pierucci v. Pierucci*, 331 P.2d 7, 17, 2014 Utah App. LEXIS 167 at p. 26 (Utah App. 2014).

10

certificates SRTC held and which belonged to Hunter in the past were transferred into the name of the next registered owner and only came into SRTC's possession briefly. Accordingly, there is no estate property located in Utah as required by § 75-1-301 titled **Territorial Application**. More importantly, SRTC's stock transfer records belong to it, not the Hunter estate.[17]

### Recommendation Regarding an Evidentiary Hearing

The Court has requested a recommendation as to whether it should hold an evidentiary hearing on the issue of the sufficiency or validity of the "probate documents" presented by Johnson. SRTC is not aware of any issues in dispute which require a factual resolution given that we know what documents Johnson comes to Court with.[18]

### CONCLUSION

Johnson has provided nothing more than a Mexican newspaper notice to establish his standing to sue a Utah resident as an appointed personal representative of a foreign Canadian estate, a notice that is null and void as a matter of Mexican law. Based on the foregoing, this Court should dismiss this case under Rules 12(b)(1), 12(b)(6), and 9(b) as contemplated in SRTC's motion to dismiss.

DATED this 23rd day of June, 2023.

MABEY & COOMBS, L.C.

/s/ *J. Michael Coombs*
J. Michael Coombs
*Attorneys for Defendant SRTC*

---

[17] This is not to ignore that Utah also lacks subject matter jurisdiction over the foreign estate under § 75-1-302 of the *Utah Probate Code* titled **Subject matter jurisdiction**, which gives a Utah court jurisdiction over "(a) estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons; (b) protection of minors and incapacitated persons; and (c) trusts." None of those people or situations are present or applicable here. Hunter was not a Utah decedent nor is any estate property or estate claimant or heir residing here. There is simply no reason to domicile a foreign estate probate administration here other than for Johnson to discover his way into a fraud lawsuit.

[18] This is not to ignore that Johnson has not rebutted the factual averments in SRTC's Motion to Dismiss and separate Motion for Sanctions with admissible evidence.

# LIST OF EXHIBITS

**Exhibit A** – Terrence Hunter, the deceased's Canadian Death Certificate and Canadian Passport

**Exhibit B** -- a full copy of *the Civil Code of the State* of *Quintana Roo* in Spanish

**Exhibit C** -- Annex I, the English translation of Articles 155 to 157, *Code of Civil Procedure of the State of Quintana Roo*

**Exhibit D** -- a full copy of the *Code of Civil Procedure of the State of Quintana Roo* in Spanish

**Exhibit E** -- Annex II, the English translation of Articles 552 to 554 of the *Civil Code of Quintana Roo* and Article 29 of *the Federal Civil Code of Mexico*

**Exhibit F** -- Annex III, the English translation of Articles 818 to 822 of the *Code of Civil Procedure of Quintana Roo*