MABEY & COOMBS, L.C.
J. Michael Coombs (Bar No. 3639)
Highland Ridge
4568 So. Highland Drive, Suite 290
Salt Lake City, UT  84117-4237
Telephone: (801) 467-2779
Facsimile: (801) 812-8469
Email address:  jmcoombs77@gmail.com

*Attorneys for Defendant Standard Registrar &
Transfer Co., Inc.*

## IN AND BEFORE THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT RYAN JOHNSON, as Executor and Trustee of the Estate of Terrence Blair Hunter,<br><br>Plaintiff,<br><br>vs.<br><br>STANDARD REGISTRAR & TRANSFER COMPANY, INC., a Utah corporation,<br><br>Defendant. | **MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT UNDER RULE 12(b)(6)**<br><br>Case No. 2:22-cv-591-AMA-DBP<br><br>Magistrate Judge Dustin B. Pead |

Defendant Standard Registrar & Transfer Co., Inc. ("Defendant" or "SRTC"), a Utah

corporation and stock transfer agent, hereby moves the Court, pursuant to Rule12(b)(6), *Fed. R.

Civ. Pro.*, for dismissal of this action on statute of limitations and other grounds.  In addition to

the statute of limitations, Plaintiffs' non-UCC claims must be dismissed because, under Tenth

Circuit and other case law, such claims are pre-empted or "displaced" by Article 8 of the

Uniform Commercial Code (UCC), particularly under the narrow facts of this case.  The following explains.

## MEMORANDUM
### Statement of Facts

1.      On September 3, 2019, nearly 5 years ago, Canadian resident and national, Terry Hunter ("Hunter"), died of cancer in Vancouver, British Columbia, Canada, via assisted suicide (meaning he had time to prepare).  Hunter had appointed his close friend and business associate, Plaintiff Robert Ryan Johnson ("Johnson"), also a Canadian, as the personal representative of his estate.  Johnson inherited all of Hunter's money and property, including his choses in action.  ¶ 3, Plaintiffs' Amended Complaint and Exhibit A thereto, Hunter's Last Will and Testament.

2.      On September 30, 2019, but a few weeks after Hunter died, Johnson emailed Defendant SRTC in which he announced he was personal representative of the Hunter Estate and in that capacity, he questioned and challenged stock transfers previously undertaken by Hunter, the deceased, in the stock of Rainforest Resources, Inc. ("RRFI").  A copy of his email evidencing knowledge of the Estate's claims is attached as **Exhibit A**.

3.      On July 1, 2021, three years ago and over a year prior to initiating this suit, Johnson commenced a nearly identical lawsuit to the instant action in the Third Judicial District Court of Salt Lake County, State of Utah, against SRTC in which he claimed an astonishing $200 MILLION in damages as personal representative of the Hunter Estate.  Therein, he claimed SRTC wrongfully and improperly transferred stock certificates of RRFI having allegedly "ineffective endorsements," transfers totaling 15 million shares.  *See* Complaint in *Robert Ryan Johnson v. Standard Registrar & Transfer Co., Inc*., Third Judicial Dist. Ct. Case No. 210903485, assigned

to Utah Judge Barry Lawrence, attached hereto as **Exhibit B** and the entire file of which the Court

can take judicial notice.

4.      In his state court Complaint, **Exhibit B** hereto, which was later dismissed by Judge

Lawarence, and having previously received no transfer-related documents from SRTC, Johnson

alleged the following specifics concerning transfer of 15 million shares of RRIF by SRTC:

10)    Because of his deteriorating health, Terry elected to give Robert Ryan
Johnson power of attorney on August 1st, 2017, so that Robert could handle his affairs.

12)    Terry [Hunter] owned – directly and indirectly, through several companies or
trusts, a total of 15,010,041 common shares of Rainforest Resources, Inc, ("RRIF") stock.

14)    All but 37 of the 15,010,041 common shares of RRIF stock owned by Terry
[Hunter] have been fraudulently transferred away to Schaefer and Tismer, or to companies
or people they control.

21)    Upon information and belief, SRTC has negligently allowed the following
transfers of Terry [Hunter] shares based on accepting forged and deficient stock powers:

  a)  On May 31, 2016, 10,004 common shares of RRIF stock owned by Terry's
  company Whitehall Trust were illegally transferred to SKM, a company
  controlled by Schaefer.

  b)  On June 29, 2016, 13,700,000 common shares of RRIF stock owned by Terry's
  company Whitehall Trust were transferred to a group of companies all
  associated with Schaeffer.

  c)  On July 20, 2016, 550,000 common shares of RRIF stock owned by Terry's
  company Tropical II Ventures LTD, were transferred to Schaefer.

  d)  On Nov 30, 2016, 20,000 common shares of RRIF stock shares (with stock
  certificate #2224) were transferred from Terry's personal name to an unknown
  recipient.

  e)  On September 21, 2017, 70,000 common shares of RRIF stock (with stock
  certificate #2233) were transferred from Terry's personal name to an unknown
  recipient.

  f)  On June 21, 2019, 20,000 common shares of RRIF stock were transferred from
  Terry's personal name to an unknown recipient.

  g)  On July 02, 2019, 10,000 common shares of RRIF stock were transferred from
  Tropical to Stephanie McNeil, Tismer's daughter.

  h) On Aug 21, 2019, 90,000 common shares of RRIF stock were transferred from Terry's personal name to Astutia, a company controlled by Tismer.

  i) Aug 21, 2019, 540,000 common shares of RRIF stock were transferred from Tropical to Astutia, a company controlled by Tismer.

  5. Plaintiffs commenced this suit on September 23, 2022. Plaintiffs confirm the timeline of the stock transfers in the previous paragraph in ¶ 2 of their Amended Complaint, alleging, "Between 2016 and September of 2019, including days before Hunter's death, SRTC, as transfer agent, and DTC and Cede, as registrars, executed transactions transferring millions of Hunter's, Whitehall's and Tropical's shares in Rainforest Resources to other parties . . .."

  6. The 15,010,041 RRFI shares subject of the state court lawsuit include or represent the exact same 15 million shares of RRFI stock subject of this lawsuit. *See* ¶ 21, Pls' Am. Compl. (referencing the same 15 million RRFI shares). There are and could be no other shares in issue.

  7. Plaintiffs' May 25, 2024, Amended Complaint, which adds the two plaintiff entities controlled by, or affiliated with, Hunter, the deceased, contains 5 claims relating to transfer of the same 15 million RRFI shares subject of Johnson's state court lawsuit referenced above. The first claim alleges a Utah Uniform Commercial Code (UUCC) violation of § 70A-8-404, specifically, a UCC Article 8 claim against SRTC for transferring stock with an "ineffective endorsement." Their second claim and third claims are negligence and gross negligence, respectively. Their fourth claim is for trespass to chattels and conversion. Their fifth claim alleges that SRTC was unjustly enriched.

  8. The latest or most recent stock transfer subject of Plaintiffs' claims occurred on August 21, 2019, over 3 years prior to Plaintiffs' commencement of this suit. The other transfers are older and go back as far as May 2016, over 8 years ago. *See* ¶'s 4 and 5 above.

## THE LAW

UUCC § 70A-8-401 titled **Duty of issuer to register transfer**, provides in subparagraph (1) that an issuer[1]  is under a duty to register transfer if (a) indorsed by an appropriate person and (b) reasonable assurance is given that the endorsements are genuine and effective. Subparagraph (2) provides that the issuer is liable for loss resulting from unreasonable delay in registration or refusal to register the transfer.  Section 8-401 means that had SRTC not effectuated transfer of the 15 million shares subject of this suit when the transfers were requested, it could have brought substantial UCC liability on itself for refusal to transfer.

UUCC § 70A-8-404 titled **Wrongful registration** provides:

> (1) *except as otherwise provided in Section 70A-8-406*, an issuer is liable for wrongful registration of transfer if the issuer has registered a transfer of a security to a person not entitled to it, and the transfer was registered:  (a) pursuant to an ineffective endorsement or instruction; . . .. [*Emphasis in italics added.*]

UUCC § 70A-8-406 titled **Obligation to notify issuer of lost, destroyed, or wrongfully taken security certificate** provides:

> (1) If a security certificate has been lost, apparently destroyed, or wrongfully taken, and the owner fails to notify the issuer of that fact within the reasonable time after the owner has notice of it and the issuer registers a transfer of the security before receiving notification, *the owner may not assert against the issuer a claim for registering the transfer under Section 70A-8-404 or a claim to a new security certificate under Section 70A-8-405.*  [*Emphasis in italics added.*]

---

[1] Under § 70A-8-407, this includes the issuer's stock transfer agent.

## ARGUMENT

### Point I—PLAINTIFFS' FIVE (5) CLAIMS ARE BARRED BY THE 3-YEAR STATUTE OF LIMITATIONS APPLICABLE TO EACH CLAIM.

As set forth in ¶ 4 of the Statement of Facts above, the last or most recent stock transfer of the 15,010,041 shares subject of Plaintiffs' Amended Complaint was transferred on August 21, 2019. Yet Plaintiffs' Complaint herein was filed on September 23, 2022, more than 3 years after the last or most recent stock transfer of which Plaintiffs complain. At the same time, there can be no dispute that Plaintiffs knew of their claims when they arose because the detail contained in Johnson's state court complaint set forth in ¶ 4 above concerning the 15 million shares is their own information, none of it having come from SRTC.[2] Johnson also had a power of attorney from Hunter as long ago as August 1, 2017, according to (10) in ¶ 4 above, and we can assume he was helping undertake Hunter's stock transfers from then until Hunter's death on Sept. 3, 2019.

The statute of limitations applicable to Plaintiffs' first claim for relief under Article 8 of the UUCC is three (3) years. Under *Utah Code Ann.* § 78B-2-305, "[a]n action may be brought within three years: . . . (4) for a liability created by the statutes of this state, other than for a penalty or forfeiture under the laws of this state, except where in special cases a different limitation is prescribed by the statutes of this state." *Accord, Fernwood Place LC v. Layton Partners Holding LP*, 2023 UT App 43, ¶ 12, 530 P.3d 165, 169, 2023 Utah App. LEXIS 45 at p. ***9 (Utah App. 2023) (statutory liability, unless otherwise specified, is three years (citing *Utah*

---

[2] The first information that SRTC provided Plaintiff Johnson concerning any of the stock transfers was provided on December 1, 2023, over a year after the Complaint herein was filed, that is, when SRTC's Initial Disclosures in this matter were due. No discovery occurred in the previous Judge Lawrence case because Judge Lawrence dismissed it.

*Code Ann*. § 78B-2-305(4)).  There is not any specified statute of limitations contained in the text of Article 8 of the UUCC titled "Investment Securities."  Accordingly, there can be no dispute that the statute of limitations applicable to Plaintiffs' First Claim for Relief is 3 years.

As to the other four tort or common law, non-contract claims in Plaintiffs' Amended Complaint, the three-year statute of limitations of *Utah Code Ann*. § 78B-2-305(3) applies.  This is because those claims seek relief grounded on fraud or mistake, that is, tort, not contract.[3]

Equitable tolling of the 3-year statute of limitations under Subsection (3) does not apply here.  This is because what was alleged in Johnson's state court complaint evidences that Johnson and his co-plaintiff associates knew of and were aware of the details concerning the allegedly questionable stock transfers of their own shares on their own—independently of obtaining transfer record information from any third party.[4]  *See* ¶ 4 above.

Because Plaintiffs were aware of their claims relative to the 15 million RRFI shares as late or recently as September 3, 2019, the day Hunter died and Johnson, as his personal representative (and having had Hunter's power of attorney since August 1, 2017), formally took over his books, records, and affairs, and because Johnson did not bring this lawsuit until September 23, 2022,

---

[3] Unjust enrichment, Plaintiffs' fifth claim, an equitable claim, is, by definition, predicated on the absence of a contract between the parties.

[4] This is consistent with the legal presumption in § 8-406 quoted above, namely, that only an owner or holder of shares knows if his, her, or its shares were mis-transferred, mishandled, lost, destroyed, or stolen; no one else would.  *Miele v. Franklin Res., Inc*., 2017 U.S. Dist. LEXIS 60698, 2017 WL 1407703 (ND Cal. 2017) ("In sum, Miele III had inquiry notice that his shares were lost or wrongfully transferred in 1992, but he did not notify Franklin until (at the earliest) 2013, well after Franklin registered a transfer of his shares.  Franklin has established its affirmative defense under Delaware Code section 8-406, and it is entitled to judgment as a matter of law.  This defense disposes of the remaining claims."); *accord, First Nat'l Bank v. Hovey*, 412 N.E.2d 889, 891, 1980 Mass. App. LEXIS 1381 at p. ***5 (Mass. App. 1980) ("The question therefore becomes whether the plaintiffs notified the defendants that their stock had been wrongfully taken within a 'reasonable time' after they had 'notice' of that fact.").  This means that equitable tolling of the statute of limitations does not apply in this case.  *See* § 78B-2-305(3).

over 3 years later, Plaintiffs' five (5) claims are time-barred as a matter of law.  This is not to ignore that Plaintiffs' claims are also barred by § 70A-8-406 quoted above, that is, they never posted lost instrument bonds to put SRTC on notice of what had allegedly happened to their shares.[5]  The Amended Complaint should therefore be dismissed on either ground with prejudice.

**Point II**—**PLAINTIFFS' ARTICLE 8, U.U.C.C. CLAIM PREEMPTS OR "DISPLACES" THEIR COMMON LAW CAUSES OF ACTION.  ACCORDINGLY, THE LAW REQUIRES DISMISSAL OF PLAINTIFFS' NON-CODE CLAIMS.**

Plaintiffs' First Claim for Relief is styled as a combined violation of Utah Uniform Commercial Code (UUCC) provisions §§ 70A-8-402, 404, and 407 but technically it only alleges a violation of § 8-404(1) which constitutes the cause of action.[6]  It provides, except as provided in § 70A-8-406 (which shifts a duty to the owner/holder of the shares), that an issuer is liable for wrongful registration or transfer if the issuer has registered a transfer of a security to a person not entitled to it, and the transfer was registered pursuant to an ineffective indorsement or instruction.

An issuer, and its stock transfer agent, are liable for wrongful registration under § 8-404 only if the issuer has registered a transfer a security to the person not entitled to it.  *Smouha v. MTA & JP Morgan Chase*, 8 Misc. 3d 248, 797 N.Y.S.2d 278, 285, 2005 N.Y. Misc. LEXIS 831 at p. ***19 (NY Sup. Ct. 2005); *Kirshtein v. AmeriCU Credit Union*, 65 A.D.3d 147, 149, 2009

---

[5] Under Utah's comparative fault statute, Plaintiffs are no doubt more than 50% at fault for that of which they complain, which, to SRTC's understanding, bars them from any recovery in this case under tort.  *See Utah Code Ann*. § 78B-5-818 titled **Comparative negligence**.  They are also estopped to claim damage.

[6] The other two provisions of the UUCC cited in the title of the claim are mere statements of the law.  For example, § 8-402 provides that the issuer may require assurance that each necessary indorsement or each instruction is genuine and authorized.  Section 8-407 provides that SRTC, as an agent of the issuer, is equally liable to the certificated owner or holder of a security to the same extent as the issuer for not properly performing stock registration functions.

N.Y. App. Div. LEXIS 4738 at p. ***3 (NY App. Div. 2009).[7]   If Plaintiffs can indeed make

such a showing, a violation of § 8-404(1) is strict liability.  This is because in accepting an

endorsement, the transfer agent relies on the signature guarantor.  That is to say, SRTC has no

duty to enquire into the genuineness of the signature.  That is not its job.  It can, but it is not

required by law to do so.  *See* § 70A-8-402.  This is why the industry enables issuers and their

transfer agents to rely on a signature guarantor, either a Medallion signature guarantee or, in the

case of Canada or Mexico, a licensed notary.[8]   Nonetheless, in order to prove its case, a second

burden is also on Plaintiffs to show that the endorsements or instructions relative to the several

certificate transfers identified in Statement of Fact No. 4 above were in fact "ineffective."[9]

     Because § 8-404 is strict liability, SRTC's research does not show that any common law

duty applies to an issuer or stock transfer agent carrying out its Article 8 duties and obligations.

Put another way, when relying on a signature guarantor, there is no common law duty to know

that the stock is properly endorsed.  And that makes sense because with strict liability, intent or

---

[7] The burden is on Plaintiffs to prove that SRTC registered a transfer of the RRSI shares "to a person not entitled" to the shares.  *Gyan Jain, Cashmere Pashmina Groups, Inc. v. T & C Holding, Inc*., 2011 U.S. Dist. LEXIS 23788 at pp. *22-23, 2011 WL 814659 (SDNY March 3, 2011).  It is difficult to understand how Plaintiffs will be able to carry that burden without naming the persons to whom the stock was transferred and with whom Hunter, the deceased, did business.  It is also difficult to understand how they will bear that burden when the person who sold or transferred the stock to the recipients thereof is dead.

[8] *Angus v. Transnational Auto Group, Inc*., 2012 US Dist. LEXIS 5033 at pp. *58-60 (DC CD Cal. Jan. 17, 2012) (§ 8-404 makes transfer agents strictly liable for wrongful registration because they rely on signature guarantors); *Mellon Investor Serv., LLC v. Longwood County Garden Centers, Inc.*, 263 Fed. Appx. 277, 281, 2008 U.S. Ap. LEXIS 2631 at pp. **12-13 (4th Cir. Feb. 6, 2008) (wrongful registration due to an "ineffective endorsement" or "instruction" is strict liability to the issuer and its transfer agent); *Ferer v. Erickson & Sederstrom, P.C*., 718 N.W.2d 501, 507, 2006 Neb. LEXIS 121 at p. ***10-11 (Neb. Sup. Ct. 2006) (the Official Comment to UCC § 8-404 makes its violation one of strict liability).

[9] Plaintiffs have a third burden of proof here as well.  Plaintiffs must also prove that they owned the shares subject of their Amended Complaint.  *Lanning v. Poulslo Rurual Tel. Assn*, 507 P.2d 1218, 1222, 1973 Wash. App. LEXIS 1452 at p. ***10 (Wash App. 1973) (establishing true ownership of stock is a prerequisite to determining liability under § 8-403 or § 8-404).  They have not done so.

duty are irrelevant.  SRTC has found but one case showing that a transfer agent breached its duty of due care but that was because the case involved a Rule 10b-5 claim stated against the transfer agent and others for failure to disclose material information along with conversion, and the duty of care the transfer agent breached was under Bahamian law, not US law.  *Zurich Capital Markets, Inc. v. Conglianese,* 388 F. Supp. 2d 847, 870 (ND Ill. Sept. 23, 2004).  In *Typenex Co-Investment, LLC v. Solar Wind Energy Tower, Inc.,* 123 F. Supp. 3d 1017, 2015 U.S. Dist. LEXIS 94127 (ND. Ill. 2015), a Rule 10b-5 convertible note fraud case, an issuer, along with its stock transfer agent, was accused of not carrying out the issuer's contractual duty to perform in good faith, specifically, to have its transfer agent issue stock to the plaintiff-lender when the issuer defaulted on a convertible note.  The issuer and its transfer agent were held to a common law duty to contract in good faith and issue stock upon demand under the contract requiring such.  But that is conspicuously dissimilar to an issuer or transfer agent's perfunctory UCC obligation to merely transfer stock—as in the case here.  This is consistent with *Cohen v. Bankers Trust Co*., 445 F. Supp. 794, 796, 1978 U.S. Dist. LEXIS 19933 at p. **6 (SDNY 1978) ("The duties and liabilities of a transfer agent are to be determined in accordance with the provisions of Article 8 of the Uniform Commercial Code.").

　　"Courts determining whether common-law or other non-UCC claims and remedies have been displaced by the UCC have emphasized the policies favoring certainty and uniformity. Thus, the prevailing view now is that when the UCC provides a comprehensive remedy for the parties to a transaction, common-law and other non-Code claims and remedies should be barred." *Abbasid, Inc. v. First Nat'l Bank of Santa Fe*, 2010 U.S. Dist. LEXIS 152743 at p. *12

(DC New Mex. Feb. 10, 2010) (citing other authorities).[10]  *Accord, C-Wood Lumber Co. v. Wayne County Bank*, 233 S.W.3d 263, 281, 2007 Tenn. App. LEXIS 44 (Tenn. Sup. Ct. 2007) ("when the UCC provides a comprehensive remedy for the parties to a transaction, common-law and other non-code claims and remedies should be barred.").[11]  Additional cases within the Tenth Circuit support this principle.  In *Ajjarapu v. AE Biofuels, Inc.*, 728 F. Supp. 2d 1154, 1164, 2010 U.S. Dist. LEXIS 74962 (DC Colo. 2010), the US District Court for the District of Colorado dismissed plaintiff's conversion and breach of fiduciary duty claims, holding that Colorado's UCC displaces common law remedies if the UCC and common law would provide a means of recovery for the same loss (citing the duty to transfer under § 8-401 of Colorado's UCC).[12]  In *Callegari v. Blendtec, Inc.*, 2018 U.S. Dist. LEXIS 190746 at pp. *16-17, 2018 WL 5808805 (DC Utah 2018), a Utah federal district court case, the defendant moved to dismiss plaintiff's causes of

---

[10] After a reconsideration, the *Abbasid* Court, 9 days later, allowed the defendant to assert a common law defense of mitigation of damages but not a contributory negligence defense.  *Abbasid, Inc. v. First Nat'l Bank of Santa Fe*, 2010 U.S. Dist. LEXIS 153014 at p. *15 (DC New Mex. Feb, 19, 2010).  On appeal, the Tenth Circuit Court of Appeals did not overrule the district court on the issue of the UCC preempting common law claims, including whether the defendant bank owed plaintiff a duty of care, ruling that any error in not presenting dismissed common law claims to the jury was harmless error.  *Abbasid, Inc. v. First Nat'l Bank*, 666 F. 3d 691, 696-97, 2012 U.S. LEXIS 1265 at p. **9-11 (10th Cir. 2012).

[11] *See also Queen City Pastry, LLC v. Bakery Technology Enterprises., LLC*, 2018 Tenn App. LEXIS 463 at p. *11, note 3 (Tenn Sup. Ct. 2018); *Crawford Supply Group, Inc., v. Bank of America, N.A.*, 2011 U.S. Dist. LEXIS 32777 at p. 46 (DC ND. Ill. 2011) ("The case law is consistent: the UCC displaces common law remedies to the extent that the facts alleged fit in a provision of the UCC.").  Here, transferring stock on an "ineffective endorsement" fits exactly within that which § 8-404 was designed to address.

[12] *Accord, Pernick v. Computershare Trust Co.*, 136 F. Supp. 3d 1247, 1264, 2015 U.S. Dist. LEXIS 132833 at p. **38) (DC Colo. 2015) ("the UCC displaces common law claims 'whenever both the code and the common law would provide a means of recovery for the same loss,' which further counsels against imposing a duty of care based upon UCC provisions (citing other authority)."); *Shelby Resources, LLC v. Wells Fargo Bank, N.A.*, 160 P.3d 387, 391-392, 2007 Colo. App. LEXIS 489 at p. **15 (Colo. App. 2007) ("When a common law negligence claim and the UCC claim necessitate the same legal analysis, there is a suggestion that 'the Code cause of action comprehensively covers the field of legal theories.'  If duplicative legal analysis would be allowed, variations in the common law among the states could destroy the uniformity in commercial transactions sought to be accomplished by the UCC.  Therefore, where the UCC provides a comprehensive remedy, a common law action is displaced (citing other authorities).").

action for breach of common law express and implied warranties.  Judge Dee Benson held that

Utah's UCC was enacted to "simplify, clarify, and modernize the law governing commercial

transactions" as well as to "make uniform the law among the various jurisdictions (citing *Utah*

*Code Ann*. § 70A-1a-103)."  Principles of law or equity in place prior to the UCC's enactment

remain intact "unless displaced by the particular provisions" of the UCC.  The UCC specifically

addresses express and implied warranties (citing provisions of the UUCC).  The late Judge

Benson went on to say that plaintiff had not provided the court with any basis or support upon

which to find that those particular provisions do not displace any prior common law claims that

might otherwise apply.  Accordingly, the Utah federal district court found that the common law

claims were barred by the Utah UCC.  The same principle applies here.[13]  The provision at issue

here is *Utah Code Ann*. § 70A-8-404(1), a strict liability offense, which is a claim for transferring

stock with an "ineffective endorsement."  The Official Comment to UCC § 1-103 provides:

> Subsection (b) [of UCC 1-103] states the basic relationship
> to the Uniform Commercial Code to supplemental bodies
> of law.  The Uniform Commercial Code was drafted
> against the backdrop of existing bodies of law, including
> the common law and equity, and relies on those bodies of
> law to supplement its provisions in many important ways.
> At the same time, the Uniform Commercial Code is the
> primary source of commercial law rules in areas that it
> governs, and its rules represent choices made by its drafters
> and the enacting legislatures about the appropriate policies
> to be furthered in the transactions it covers.  Therefore,
> while principles of common law and equity may
> *supplement* provisions of the Uniform Commercial Code,
> they may not be used to *supplant* its provisions, or the
> purposes and policies those provisions reflect, unless a
> specific provision of the Uniform Commercial Code
> provides otherwise.  In the absence of such a provision, the

---

[13] Thus, a fourth burden should be placed on Plaintiffs here to prove that § 8-404(1) does not displace any prior common law claims that might otherwise apply.

> Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

*Maple Trade Fin. v. Lansing Trade Group, LLC*, 2011 U.S. Dist. LEXIS 28839 at pp. *42-43 (DC Kan. 2011) (quoting the Official Comment to UCC 1-103); *Reser's Fine Foods, Inc. v. H.C. Schmiedling Produce Co., LLC*, 2017 US Dist. LEXIS 149937 at p. *14, note 2 (DC Kan. 2017) (the UCC preempts common law set off because set off is provided for in the UCC). In *Rupp v. Bak One, Utah, NA*, 2005 Bankr. LEXIS 3208 at *3 (Utah Bnkr. July 14, 2005), Utah federal district court Judge Ted Stewart held that "under Article 4A of the UCC, principles of law or equity outside of Article 4A that are inconsistent with Article 4A are preempted by the statutory scheme." The converse is illustrated in *First Nat'l Bank v. Southwester Livestock, Inc*., 859 F.2d 847, 853 (10th Cir. 1998). There, the Tenth Circuit held that because the UCC does not address the conversion liability of auctioneers or third parties in livestock auctions, defendant's liability must be determined by an analysis of the Kansas common law concerning liability for conversion. That is not the case with Article 8 of the UCC simply because it addresses stock transfers by issuers and transfer agents and the problems associated with those unique commercial tasks.

In *Yahn & McDonnell, Inc. v. Farmers Bank of Delaware*, 708 F.2d 104, 113 (3rd Cir. 1983), an Article 8 case involving payment on a CD that was refused because it has already been paid, the Third Circuit Court of Appeals held that where the UCC provides a comprehensive remedy for parties to a transaction, a common law action is barred. However, a remedy in tort will be recognized where the Code's policy is furthered by placing the risk of loss on the party most able to minimize that risk. *Id*. In this case, the party most able to minimize the risk of "ineffective endorsement" is the Canadian notary which notarized Hunter's signature, or the

signatures of Johnson's co-plaintiff entities related to Hunter.  Putting that risk on SRTC, which is

not a guarantor of any signatures relative to the stock certificates or stock powers at issue in this

case, would not further the purposes of the UCC.  It therefore does little good to foist non-UCC

liability under the UCC on someone like SRTC who did not cause plaintiff's damage.  To be sure,

Hunter and his nominees chose and used Canadian notaries in their dealings with SRTC, it was

not SRTC's doing or choice.  In *New Jersey Bank, NA v. Bradford Sec. Operations, Inc*., 690 F.2d

339 (3rd Cir. 1982), the court held at p. **19-20 that the UCC is to be "liberally construed and

applied to promote its underlying purposes and policies," which includes simplifying and

clarifying the law governing commercial transactions, fostering the expansion of commercial

practices, and standardizing the laws of the various jurisdictions.  It went on to hold that "where

Article 8 does provide a comprehensive remedy for parties to a transaction, a common-law action

will be barred."[14]  *Id*. at p. **22.  Nonetheless, the court allowed a negligent handling of

securities claim in spite of Article 8 because the defendant allowed the securities to be stolen.  By

contrast, in this case, the UCC directly and squarely addresses "ineffective endorsement."  There

is nothing unusual in this case outside of what Article 8 of the UCC was specifically enacted to

address and govern in commercial transactions that would justify allowing common law causes of

action.

In *Mahaffy & Assocs. v. Long*, 2003 Del. Super. LEXIS 351 at pp. *18-19 (Del. Superior

Ct. Sept. 29, 2003), a case involving a bank's payment on allegedly forged checks, the Court held

that "[c]ommon Law claims as they apply to the duties of a depository bank are displaced only to

---

[14] Citing *Brannon v. First National Bank of Atlanta*, 137 Ga. App. 275, 223 S.E.2d 473 (1976)
(disallowing unjust-enrichment claim in a suit for breach of Article 8's signature warranties because
warranties would be rendered meaningless by allowance of common-law claim).

the extent that the UCC contains particular provisions regarding those duties." *Id*. It went on to say, "the legislature had preempted the field by enacting § 4-406 as to a customer's duty to discover and report unauthorized signature or alteration." Thus, competing theories of liability were not permitted. [15] Here, it is clear that *Utah Code Ann*. § 70A-8-404(1), which comprises Plaintiffs' Claim One, is part of a comprehensive remedy to address exactly what Plaintiffs allege, namely, that SRTC transferred securities based on an "ineffective endorsement." It is not more complicated than that and there are no strange or unique facts which would lead to a different conclusion.

In *Sarrouf Law LLP v. First Republic Bank*, 2018 Mass. Super. LEXIS 125 at p. *26, note 13 (Mass. Superior Ct. 2018), the Court, in addressing a California UCC provision, displaced a law firm's negligence claim based upon wire transfers because there was nothing in the record to suggest that the bank did not accept the duly authorized and error-free wire transfer since it sent the wires exactly as the firm's bookkeeper had instructed it to do so. The firm's negligence claim was barred by the economic loss doctrine because the relationship between the parties was governed by the depository agreements, as supplemented by the UCC. Moreover, the bank used ordinary care, like SRTC did here, when it accepted a deposit check from the firm because a visual examination showed no obvious signs of fraud. The Court at p. *26, note 13, held that an

---

[15] *Accord, Dean v. Commonwealth Bank & Trust Co*., 434 S.W.3d 489, 506-507 (Ky. Sup. Ct. 2014) (When considering whether the UCC displaces common law remedies, a majority of jurisdictions decide UCC-displacement questions with the comprehensive rights and remedies test. Under that rule, where the UCC provides a comprehensive remedy for the parties to a transaction, a common law action will be barred.); *MERV Prop., LLC v. Friedlander*, 2015 Bankr. LEXIS 1509 at pp. *58-59 (ED Bkrp. Ky. 2015) (the UCC provides a comprehensive remedy or scheme of remedies. The list of scenarios directly covered by Articles 3 and 4 is long such as the liability between the bank and the customer for payment on unauthorized signature or altered instrument. While the listing is far from complete, the UCC system of remedies itself is intended to be a comprehensive allocation scheme for check fraud losses.).

integrated view of Article 4 of the UCC leads to the conclusion that the common law does not

roam freely over and through specific Code provisions but supplies a loss-allocation framework

only when specific Code provisions do not (citing other authorities). [16]

The foregoing is consistent with the general law distinguishing tort from contract. There

is no common law duty to know that stock is properly endorsed if the issuer or transfer agent is

relying on a professional signature guarantor. To take it outside of the Code, a duty of care had to

have been breached that caused damage. SRTC was not under a duty to inquire into the

legitimacy of the Hunter and other endorsements when notarized by a professional Canadian

notary in lieu of a Medallion signature guarantee and Plaintiffs can find no authority to the

contrary. Here, SRTC reasonably relied on the Canadian notary, the guarantor of the signatures

as that was its policy on transfer requests by Canadian owners and holders, including Hunter, a

person with whom SRTC had long dealt. SRTC can find no case holding that there is common

law duty to know if a stock certificate or stock power was properly endorsed if relying on a

signature guarantor.

Because the only wrong alleged in Plaintiffs' Amended Complaint is that SRTC

transferred shares based on an "ineffective endorsement," and because the UCC addresses that

specific eventuality in § 8-404(1), and further, because the foregoing discussion confirms that

transferring shares on an "ineffective endorsement," if proven by Plaintiffs, is strict liability on

the part of the issuer and its transfer agent, there is no legal or other basis to take this case outside

---

[16] On appeal, the Massachusetts appellate court, in *Sarrouf Law LLP v. First Republic Bank*, 148 N.E.3d 1243, 1249 (Mass App. 2020), affirmed the earlier 2018 case and held that where a UCC provision specifically defines parties' rights and remedies, it displaces analogous common-law theories of liability. "Otherwise, banks would face a motley patchwork of liability standards from State to State." *Id.*

of the UCC regulatory scheme.  Article 8 comprehensively regulates and addresses an issuer or stock transfer agent transferring shares in interstate commerce on an "ineffective endorsement." The same Article of the UCC affects and governs all stock transfer agents in the United States. Because Plaintiffs' common law Claims Two through Five are well outside Article 8 of the UUCC, all such claims should all be dismissed as several courts identified above have done, including several courts within the Tenth Circuit.

**Point III—CLAIMS TWO, THREE, FOUR, AND FIVE FAIL TO STATE A CLAIM ON THEIR FACE AND EACH SHOULD BE DISMISSED.**

As an alternative to Arguments I and II above, Claims Two thru Five of the Amended Complaint fail to allege the required elements of each and should therefore be dismissed.

A. **SRTC owed no duty to Plaintiffs beyond carrying out its transfer agent duties and functions under Article 8 of the UUCC and therefore, Claims Two and Three for negligence and gross negligence, respectively, both of which are included to get punitive damages, should be dismissed.** The elements of negligence are: (1) the existence of a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) a sufficient causal relationship between the defendant's breach and the plaintiff's injuries. *Baca v. Clark*, 2007 U.S. Dist. LEXIS 49426 at p. *12, 2007 WL 2022054 (DC Colo. 2007) (citing other authorities); *Morcato v. TIE Techs., Inc.*, 2005 U.S. Dist. LEXIS 867 at p. *19-20 (SDNY 2004) (a common law claim like negligence requires a duty that was breached and that the alleged breach caused damage).  In ¶'s 50 and 51, Claim Two, Pls. Am. Compl., which are parroted in ¶'s 55 and 56, Claim Three, Plaintiffs allege that SRTC has a separate duty to transfer stock without making a mistake.  But the duty to transfer stock properly is already ingrained or inherent in Chapter 4, Article 8 of the UUCC.  Such a duty does not exist independently or outside of the UUCC.  To

allege that it is, is simply making a duty up out of thin air or whole cloth and ascribing it to SRTC to advance a different claim or theory of liability.  "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014).  If SRTC had a duty under the UCC to do something beyond what the UCC requires it to do in transferring stock, Plaintiffs fail to allege what that duty is.  Since stock transfer agents routinely rely on signature guarantors in transferring stock, STRC did not fail to exercise ordinary prudence beyond what any other stock transfer agent would do, particularly given SRTC's long relationship with Hunter.[17]

It is also noteworthy here that Plaintiffs and SRTC were in privity of contract.  SRTC was engaged to do stock transfers for the owners of RRFI shares and it had a fee schedule to identify what the costs of doing so were.  "A negligence action will not lie when the parties are in privity of contract" unless "there is a special relationship between the alleged tortfeasor and the injured party not arising in contract." *Tommy L. Griffing Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc*., 320 S.C. 49, 463 S.E.2d 85, 88 (S. Car. 1985).  Nowhere in the Amended Complaint do Plaintiffs allege any such "special relationship."

Finally, Plaintiffs do not allege that SRTC was under a unique or separate common law duty to inquire into the legitimacy of endorsements when the same are notarized by a Canadian notary in lieu of a Medallion signature guarantee.  And that is because Medallion signature guarantees are not available in Canada or to Canadians.  SRTC could not have relied on a Medallion signature guarantee in this case because there never would have been one.  Plaintiffs

---

[17] This is not to ignore that negligent interference with personal property is not even a recognized cause of action in Utah.  *Rand v. KOA Campgrounds*, 2014 UT App 246, 338 P.3d 222, 226, note 4, 2014 Utah App. LEXIS 250 at p. ***9, note 4 (Utah App. 2014) (summarizing conclusion of trial court without criticism).

can find no authority holding the contrary.  Claims Two and Three should be dismissed because

SRTC owes Plaintiffs no transfer duty beyond its duties incorporated into Chapter 4, Article 8 of

the UUCC.  Only those duties and obligations govern the actions of SRTC in this case.

      B.      **SRTC did not convert the 15 million shares to its own use or benefit and had**

**no intent to deprive Plaintiffs of their shares and therefore, Claim Four for trespass to**

**chattels and conversion fails to state a claim.  Moreover, Plaintiffs could have posted lost**

**instrument bonds to make themselves whole or effectuated "cover" and bought**

**replacement shares, thereby mitigating their damages.**

> "Conversion is an act of willful interference with a
> chattel, done without lawful justification by which
> the person entitled thereto is deprived of its use and
> possession." *Kirkham v. Widdison*, 2019 UT App
> 97, ¶ 24, 447 P.3d 89.  "A basic requirement of
> conversion is that there be a wrongful exercise of
> control over personal property in violation of the
> rights of its owner." *Steinberg v. Cmty. Housing
> Services-Capitol Villa, Ltd.*, 2014 UT App 102, ¶ 11,
> 326 P.3d 673.  Similarly, trespass to chattels is
> understood to occur when one "intentionally (a)
> dispossess[es] another of the chattel, or (b) us[es] or
> intermeddl[es] with a chattel in the possession of
> another." *Restatement (Second) of Torts* § 217 (Am
> L. Inst. 1965).

*Nassi v. Hatsis,* 2023 UT App 9, ¶ 23, 525 P.3d 117, 122, 2023 Utah App. LEXIS 3 at p. ***10

(Utah 2023).  Plaintiffs do not allege what is necessary to state a claim for conversion and

trespass to chattels.  In ¶ 60, Pls' Am. Compl., Plaintiffs allege that they did not consent to their

shares being transferred.  But if that is so, how did the shares get sent to SRTC before Hunter

died?  If Plaintiffs lost them or they were stolen, why did Plaintiffs not report them lost or stolen

going back to early 2016 when the first questionable transfers occurred?  Why did Plaintiffs not

post lost instrument bonds if they had been lost or stolen 8 years ago?  In ¶ 61, Plaintiffs allege that SRTC was aware of its obligation to ensure that transfers came from the certificate holders, but the fact is that there is nothing that Plaintiffs have alleged to show that SRTC did not appreciate this obligation and abide by it.  In ¶ 62, Plaintiffs allege that SRTC transferred stocks based on the request of an imposter.  This again begs the question that if this were so, why had Plaintiffs not notified SRTC "within a reasonable time" going back to 2016 that the 15 million shares were lost or stolen as statutorily required of them in § 8-406 quoted above?  In ¶ 63, Plaintiffs allege that SRTC's acts "deprived Plaintiffs of their possession of the Rainforest common stocks."  But if the stocks had been previously lost or stolen going back to 2016, some-8 years ago, why did Plaintiffs not comply with § 8-406 of the UUCC?  If the stocks were stolen going back to 2016, SRTC obviously did not "convert" them or "trespass" upon them because they had already been converted by someone else.  In ¶ 64, Plaintiffs allege that SRTC was reckless in not following industry standards in transferring the 15 million shares.  But Plaintiffs point to nothing to show that the industry does not accept notarized signatures from Canadians and Mexicans who seek to transfer their stock, that is, from citizens of countries that do not offer their citizens Medallion signature guarantees.  In ¶ 65, Plaintiffs allege that they were proximately harmed by SRTC's unlawful trespass and conversion.  But this is not true if the certificates representing the shares had been lost or stolen as long as 8 years ago and due to the fact Plaintiffs themselves lost their stock and then violated § 8-406.  In short, Plaintiffs do not adequately allege the elements of conversion as reiterated in *Nassi v. Hatsis* quoted above because their allegations are conclusory and make no sense.

*In H&P Inv. v. iLux Capital Management, LLC*, 2021 UT App 113, ¶ 41, 500 P.3d 906, 2021 Utah App. LEXIS 114 (Utah App 2021), a case in which a hedge fund failed to obtain shares to issue to an investor, the Utah Court of Appeals held that defendant's nonperformance of an obligation to issue shares was a breach of contract, not a conversion.  In a breach of contract setting, the tort or New York measure of damages for conversion is inapplicable and does not apply.  *Id*.  Here, if Plaintiffs' allegations are true, simply processing what turns out to be an "ineffective endorsement" that the issuer and SRTC were not aware of and have no duty to investigate because they were relying on the signature guarantor, does not amount to tortious or intentional conduct; it is an error by SRTC conducted solely within the bounds and confinements of what Article 8 of the UUCC governs.  In light of Plaintiffs' violations of § 8-406 and SRTC's act of transferring shares that may have had an "ineffective endorsement," if true, the facts of this case constitute, at best, a mere breach of SRTC's UCC obligation to transfer upon an "effective endorsement," not a tort and not the tort of conversion or trespass to chattels.  *Walker v. Union Pac. RR*, 844 P.2d 335, 343, note 9, 1992 Utah App. LEXIS 160 at p. **17, note 9 (Utah App 1992) ("the doctrine of trespass to chattels has fallen into general disuse, and even when applied requires that there be some damage to the chattel in question" (citing other authorities)).

C.    **Unjust enrichment, an equitable claim when no agreement exists, does not apply to the facts of this case and should be dismissed.**  For an unjust enrichment or quantum meruit claim to withstand a motion to dismiss, "there must be (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Concrete*

*Products Co. v. Salt Lake County*, 734 P.2d 910, 911 (Utah 1987).  The measure of damages for such a claim is the value of the benefit conferred.  Such a claim is inapplicable when there is an agreement affecting the parties.  Here, SRTC performed a service for RRFI and its shareholders for which it would be paid.  A Utah Court of Appeals case is on point.  In *Nickerson Co. v. Energy West Mining Co*., 2009 UT App 366, 2009 Utah App. LEXIS 384 at p. *2-3 (Utah App. 2009), plaintiff's express contract with a construction company covering the subject matter of the litigation, i.e., the cost and installation of pumps, barred any claim for recovery against defendant on a theory of unjust enrichment because unjust enrichment is only available when no express contract is present.  "The fact that a third person benefits from a contract between two others does not make such third person liable in unjust enrichment."  *Id*. at p. *5.  Thus, SRTC's asking for transfer fees when it undertook to transfer stock as requested by an RRFI shareholder, does not give rise to an unjust enrichment claim against SRTC.  SRTC was not unjustly enriched.[18]   SRTC performed the services asked of it and was compensated accordingly. Because unjust enrichment is logically and legally inapplicable to a case involving an agreement or known arrangement, the claim must be dismissed.  Equitable relief is not an issue in this case.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' 5 claims are each barred by Utah's 3-year statute of limitations.  The latest stock transfer of which Plaintiffs complain occurred on August 21, 2019, over 3 years prior to the day they filed this lawsuit and before Hunter died.

---

[18] This raises the issue of why did Plaintiffs pay SRTC for the stock transfers if they did not authorize them and the endorsements were not "effective"?  Why would a person do that, not once but repeatedly?

Alternatively, Plaintiffs' non-code claims 2 thru 5 should be dismissed with prejudice given that, as a matter of law, their first claim for relief under Chapter 4, Article 8 of the UUCC preempts or "displaces" them.  As *Crawford v. Bank of America, supra*, holds, "the UCC displaces common law remedies to the extent that the facts alleged fit in a provision of the UCC."  That is exactly the situation here.

As a third alternative, Plaintiffs' Claims Two through Five, inclusive, fail to allege and satisfy the elements necessary to maintain each such claim under the facts presented and therefore, they fail to give Defendant SRTC adequate notice of the charges against it.  This violates due process of law.

DATED this <u>7th</u> day of June, 2024.

MABEY & COOMBS, L.C.

   /s/ *J. Michael Coombs*
J. Michael Coombs
*Attorneys for Defendant Standard Registrar*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of June, 2024, I caused a true and correct copy of the foregoing, including all attendant exhibits, to be served on those counsel identified below via email as per the Court's electronic filing system:

*Andrew G. Deiss*
*David Ferguson*
*Corey Riley*
*DEISS LAW, P.C.*
*10 West 100 South, Suite 700*
*Salt Lake City, Utah 84101*
*deiss@deisslaw.com*
*dferguson@deisslaw.com*
*criley@deisslaw.com*


*/s/ J. Michael Coombs*
*J. Michael Coombs*