Andrew G. Deiss (7184)
DEISS LAW, P.C.
10 West 100 South, Suite 700
Salt Lake City, Utah 84101
Telephone: 801.433.0226
deiss@deisslaw.com

Stephen K. Christiansen (6512)
CHRISTIANSEN LAW, PLLC
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
Telephone: 801.716.7016
Facsimile: 801.716.7017
steve@skclawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF UTAH

| | |
|---|---|
| ROBERT RYAN JOHNSON, as Executor and Representative of the Estate of Terrence Blair Hunter; the WHITEHALL TRUST, a Bahamian private trust company; and TROPICAL II VENTURES LTD., a Bahamian corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>STANDARD REGISTRAR & TRANSFER COMPANY, INC., a Utah Corporation; THE DEPOSITORY TRUST COMPANY, a foreign corporation; and CEDE AND COMPANY, a New York partnership,<br><br>Defendant. | **MEMORANDUM OPPOSING MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT UNDER RULE 12(b)(6)**<br><br>Case No. 2:22-cv-591-AMA-DBP<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead<br><br>**ORAL ARGUMENT REQUESTED** |

# **INTRODUCTION**

Defendant Standard Registrar & Transfer Company, Inc. ("SRTC") has moved for dismissal of Plaintiffs' Amended Complaint ("Complaint") under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs' claims, as alleged, are all barred by a three-year statute of limitation under Utah Code § 78B-2-305. SRTC also argues that Chapter 8 of Utah's Uniform Commercial Code preempts Plaintiffs' common law claims, which SRTC argues are insufficient in any event. Each of these arguments fails.

First, Defendant applies the wrong statute of limitations, even if its analysis of the substantive claim were accepted. Under Defendant's approach, the correct statute to apply to this case would be found in Utah Code § 78B-2-309, which provides a six-year period within which Plaintiffs may file their claim because the claim is based on one or more instruments in writing – the wrongfully transferred stock certificates and the fraudulent "guarantees" thereon.

However, even if the three-year statute of limitations Defendant attempts to apply were the correct one, the Complaint was timely filed in September 2022 under the continuing torts doctrine, applying Utah's automatic three-month tolling period upon death, as the complained-of conduct continued through September 2019. Alternatively, that three-year period should be tolled per the doctrine of equitable discovery. Under this well-established doctrine, a limitations period may be equitably tolled until a party discovers or reasonably should have discovered the facts forming the basis of its claims. A Defendant's wrongful concealment of such facts constitutes the prototypical application of this doctrine, which is exactly what happened here. As the Complaint alleges, Plaintiffs did not discover the unauthorized transfers until after they had been executed because Defendant intentionally and unreasonably concealed relevant facts. A three-year limitations period, even if applicable, would not have begun until Plaintiffs discovered

the unauthorized transfers, which by the Complaint's own allegations occurred less than three years prior to the filing of the instant action.

Defendant also argues that Plaintiffs' claims are barred under Utah Code § 70A-8-406. This statute requires that an owner of stock notify the issuer thereof that the stock was wrongfully taken (or lost or apparently destroyed). But Defendant was the party with that very information, i.e., information regarding stock transfers that were never authorized by Plaintiffs, which Defendant either knew or should have known were improperly executed. Because Defendant executed these transfers, Defendant should not be permitted to take advantage of its own wrong. In any event, the Complaint alleges that Defendant withheld or concealed this information until July 2021, which means Plaintiffs did not receive notice (as required by the statute) until that time. The instant action was filed in September 2022. So, the Complaint was filed in compliance with this statute. Defendant argues that the UCC displaces Plaintiffs' common law claims. However, while Chapter 8 imposes strict liability on a transfer agent for wrongful transfer, cases from around the country demonstrate that UCC and common law remedies are not mutually exclusive.

Finally, Plaintiffs' common law claims each state plausible claims upon which relief can be granted. The elements of a claim for negligence and gross negligence are each alleged in the Complaint. Defendant's argument that these claims are barred under the economic loss doctrine is unavailing where no contractual relationship has been alleged in this case. Conversion and trespass to chattels are also plausibly alleged and Defendant's argument regarding Plaintiffs' purported failure to mitigate is irrelevant. Lastly, the elements of a claim for unjust enrichment have been plausibly alleged. In short, Defendant simply argues that Plaintiffs' common law claims are likely to fail, not that the Complaint merely recites their legal elements without more.

Only the latter, as opposed to the former, can meet the high standard for dismissal under Rule 12(b)(6). Defendant's Motion should be denied.

**RELEVANT FACTS**

1.      On September 1, 2019, Plaintiff Robert Ryan Johnson was appointed as the sole executor and beneficiary of the estate of Terrence Blair Hunter ("Hunter"). Am. Compl. ¶ 16.

2.      Hunter died on September 3, 2019. *Id*. ¶ 17.

3.      Hunter, Whitehall and/or Tropical owned more than 15,000,000 shares of Rainforest Resources common stock as of the beginning 2016. *Id*. ¶ 21.

4.      None of the Plaintiffs in this case, including Hunter prior to his death, ever sold or authorized the sale of these shares or received any pecuniary benefit for relinquishing any of their shares in Rainforest Resources. *Id*. ¶ 22.

5.      Between May 2016 and September 2019 (mere days before or after Hunter's death), SRTC, DTC and/or Cede registered transfers of more than 15 million shares of Hunter's, Whitehall's or Tropical's common stock to other people or entities. *Id*. ¶ 23.

6.      These transfers were not authorized by any of the Plaintiffs. *Id*. ¶ 24.

7.      In or around August and September 2019, an additional 630,000 shares of Hunter's, Whitehall's and/or Tropical's Rainforest Resources stock were transferred without authorization from Mexico by Defendant. *Id*. ¶ 25.

8.      Defendant unlawfully transferred Hunter's shares (including shares held by trusts (Whitehall) and other entities owned by Hunter (Tropical)) of Rainforest Resources pursuant to an ineffective indorsement or instruction. *Id*. ¶ 46.

9. After Hunter's passing, while managing Hunter's estate in preparation for probate, Johnson discovered that these transfers had occurred that were suspicious and concerning. *Id*. ¶ 26.

10. Johnson requested SRTC to provide Johnson (as executor of Hunter's estate) with any information and documentation in SRTC's possession, custody, or control reflecting Hunter's Rainforest Resources historical stock interests and any transfers of Hunter's Rainforest Resources stock shares. *Id*. ¶ 27.

11. SRTC refused to provide such information and documentation. *Id*. ¶ 28.

12. Rainforest Resources sent SRTC an email requesting that SRTC provide Johnson, as executor of Hunter's estate, with any records concerning Hunter's Rainforest Resources stock interests and any transfer of those interests. *Id*. ¶ 29.

13. SRTC again refused to provide such information and documentation. *Id*. ¶ 30.

14. Rainforest Resources sent a follow up email to SRTC authorizing SRTC to release "information about Terry Hunter's shares which were potential fraudulent transfers." *Id*. ¶ 31.

15. SRTC again refused to provide such information and documentation. *Id*. ¶ 32.

16. Subsequent demands from Johnson's legal counsel met the same result; SRTC stonewalled and refused to provide the requested information. *Id*. ¶ 33.

17. In fact, it was only in response to the complaint in the instant case that Defendant provided any information at all when, through declaration, Defendant first suggested on this record that, "If SRTC ever did hold stock belonging to the deceased, it was several years ago, and it was only for a brief time, such as a few days at best, while it effectuated a transfer of the

shares into another registered owner's name and delivered the shares out." (Coombs Decl., ECF No. 5, Ex. 6, ¶ 11.)

18.     Through the date of the Original Complaint, SRTC continued to refuse Johnson's requests for complete information and documentation as to Hunter's stock interests, including the relevant transfer requests, instructions, and authorizations (apparently made on Hunter's purported behalf, but absent Hunter's actual authorization). SRTC has continued to maintain that Johnson is not the lawful executor of the Estate, notwithstanding the fact that Hunter's will providing Johnson with this authority has now been probated in Mexico (where Hunter had lived for decades prior to his death), British Columbia, and Utah. Moreover, Rainforest Resources— the company for which SRTC acted as transfer agent—has expressly authorized SRTC to release such information and documentation to Johnson. *Id*. ¶ 34.

19.     During his lifetime, Hunter formed, owned and was president of Tropical II Ventures Ltd. This entity owned certain convertible notes by Amalgamated Gold and Silver, Inc., Rainforest Resources' predecessor. To the extent Tropical owned any shares of Rainforest Resources either directly or through the converted notes, Tropical has joined in this action to recover the shares held in its name. *Id*. ¶ 44.

20.     On July 1, 2021, Plaintiff Johnson filed a complaint in state court that was ultimately dismissed on grounds other than the merits, i.e., for failure to post a cost bond; he filed the instant action on September 12, 2022.

## ARGUMENT

"To survive a motion to dismiss, the complaint must allege sufficient facts to state a claim for relief plausible on its face." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136 (10th Cir. 2023). "Generally, a court considers only the contents of the complaint when

ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) Additionally, when reviewing such motions, "the court views all inferences in the light most favorable to the nonmoving party." *In re Overstock Sec. Litig.*, No. 2:19-CV-709-DAK-DAO, 2020 WL 5775845, *5 (D. Utah Sept. 28, 2020). Thus, if the complaint provides fair notice of the claim and the factual allegations are sufficient to show that a right to relief is plausible, a court should deny a 12(b)(6) motion to dismiss. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' complaint states plausible claims for relief on its face. Defendant's arguments are unavailing. The Motion should be denied.

## I.     THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS.

### A.  The Applicable Limitations Period is Six Years.

As plainly as could be possible, Utah statutes provide a six-year limitations period for claims based on share certificates. The pertinent statute of limitations in this case is established by Utah Code § 78B-2-309(1), which states that (except for a couple of inapplicable exceptions): "An action may be brought within six years … upon any contract, obligation, or liability founded upon an instrument in writing." An "instrument" is "[a] written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, *or share certificate*" and includes "investment instruments … such as a bond, *share certificate*, or promissory note, used to acquire capital through a loan or by selling equity." Black's Law Dictionary (12th ed. 2024) (emphasis added).

Plaintiffs' claims relate directly to Defendant's handling of share certificates, and to the fraudulent written "guarantees" of the forged signatures on the certificates. Therefore, although Defendant may be correct that "[t]here is not any specified statute of limitations contained in the

text of Article 8 of the UUCC" (Mot. p. 7) – it does not follow that the default period established by Utah Code § 78B-2-305 applies; this argument completely ignores the six-year statute of limitations for written instruments in Utah Code § 78B-2-309(1) and the fact that the catchall statute of limitations is only applicable "*except where in special cases a different limitation is prescribed by the statutes of this state.*" Utah Code § 78B-2-305 (emphasis added). In the case of a general statute and a specific one, the specific statute applies. *See In re Hoopiiaina Trust*, 144 P.3d 1129, 2006 UT 53 ¶ 35 (Utah 2006) (Jackson, J., concurring in part and dissenting in part) (specific statute setting six-year limitations period controls over a more general one).

Since Utah Code § 78B-2-309(1) definitively sets forth a limitations period for instruments in writing, and Plaintiffs' claims are firmly based on instruments in writing – share certificates and the fraudulent written "guarantees" thereon – the three-year default time period is supplanted by the specific statutory six-year limitations period.[1]

## B. Even if a Three-Year Statute of Limitations Were to Apply, Plaintiffs' Claims Are Still Not Barred.

First, under the continuing or repeated violations doctrine, the earliest date the limitations period could accrue is September 2019, the date that the tortious conduct of wrongful share transfers ceased. *Pinder v. Duchesne County Sheriff*, 2020 UT 68, ¶ 75; *Bingham v. Roosevelt City*, 2010 UT 37, ¶ 56 ("The continuing tort doctrine provides an exception to this general rule,

---

[1] In the alternative, if more than one statute of limitations could conceivably apply, justice requires that the longer statute of limitations be applied. *See Cathco, Inc., v. Valentiner Crane Brunjes Onyon Architects*, 944 P. 2d 365, 369 (Utah 1997) ("'where there is a substantial question which of two or more statutes of limitation within the jurisdiction should be applied, the doubt should be resolved in favor of the application of the statute containing the longest limitation. In other words, if a substantial doubt exists as to which is the applicable statute of limitations, the longer rather than the shorter period of limitation is to be preferred.' Therefore, if given a choice between statutes, we should apply the longer limitation period." (*quoting* 51 Am.Jur.2d Limitation of Actions § 63 (1970).)

tolling the statute of limitations while the tortious conduct continues unabated."). Were that not enough, the applicable period was automatically tolled for three months following Decedent Hunter's September 3, 2019 death under Utah Code § 75-3-802. With the complaint filed in September 2022, Plaintiffs' complaint is timely filed within 3 years of the conclusion of the tortious conduct as alleged plus the automatic three-month tolling period following Decedent's death.

Alternatively, even if a three-year statute of limitations period were applicable in this case, the claims alleged in the Complaint would not be barred.

Defendant argues that Plaintiffs' first cause of action is barred by the three-year statute of limitations provided under Utah Code § 78B-2-305(4). While causes of action under this statute generally must be commenced within three years after the cause of action has accrued, the doctrine of equitable discovery serves as a well-established exception to this rule under the relevant case law. That exception applies to the facts of this case.

21.     Defendant also argues, without analysis, that Plaintiffs' claims are independently barred under Utah Code § 70A-8-406. This statute requires that an owner of stock provide the issuer thereof with notice that the stock was wrongfully taken (or lost or apparently destroyed). But Defendant should not be insulated from liability under this statute for Plaintiffs' failure to provide Defendant with notice of something Defendant itself already knew (or should have known)—that the transfers Defendant executed were never authorized by Plaintiffs. This, too, when Defendant continually refused to provide this very information despite Plaintiffs' repeated requests. In fact, it was only in response to the complaint in the instant case that Defendant provided any information at all when, through declaration, Defendant first suggested on this record that, "If SRTC ever did hold stock belonging to the deceased, it was several years ago,

and it was only for a brief time, such as a few days at best, while it effectuated a transfer of the shares into another registered owner's name and delivered the shares out." (Coombs Decl., ECF No. 5, Ex. 6, ¶ 11.) Defendant should not be permitted to take advantage of its own wrong.

Both of Defendant's arguments fail as discussed in greater detail below.

### i. The Doctrine of Equitable Discovery Tolled the Three-Year Statute of Limitations Period.

Even if a three-year statute of limitations applied to any of Plaintiffs' claims in this case, the doctrine of equitable discovery tolled the limitations period rendering Plaintiffs' Complaint timely filed.

The Utah Supreme Court has noted that "equitable discovery requires that the plaintiff neither knew nor reasonably should have known of the facts underlying his or her cause of action or that a reasonably diligent plaintiff may have delayed in filing his or her complaint." *Fitzgerald v. Spearhead Invs.*, LLC, 2021 UT 34, ¶ 21, 493 P.3d 644, 649 (cleaned up). Notably, "equitable discovery is invoked in cases where the plaintiff is ignorant of his cause of action because of the Defendant's fraudulent concealment." *Id*. ¶ 16 (internal quotations omitted). Finally, "the equitable discovery rule may [] operate to toll the limitations period until the time at which a party discovered or reasonably should have discovered the facts forming the basis for the cause of action." *Ottens v. McNeil*, 2010 UT App 237, ¶ 57, 239 P.3d 308 (cleaned up).

Here, the Complaint, on its face, alleges facts sufficient to invoke the doctrine of equitable discovery. For instance, the Complaint alleges that Johnson did not discover that Defendant had executed unauthorized stock transfers until "[a]fter Hunter's passing." Am. Compl. ¶ 26. Hunter passed away on September 3, 2019. *Id*. ¶ 17. Notably, the Complaint does not allege the specific day on which Johnson discovered the unauthorized transfers, e.g., whether he discovered them later that same month or several months or even years later. So, when

viewing these allegations—which are taken to be true for purposes of Defendant's Motion—in the light most favorable to Plaintiffs, Johnson's Complaint, filed on September 12, 2022, should be construed as filed within three years of his discovery of the unauthorized transfers. Statement of Facts ("SOF") ¶ 19.

Additionally, Johnson should not "reasonably [] have discovered the facts forming the basis for the [instant action]" where the Complaint clearly alleges that Defendant continually concealed that very information from him. *Ottens* ¶ 57. For example, while preparing Hunter's estate for probate, Johnson requested that SRTC provide Johnson (as executor of Hunter's estate) with any information and documentation in SRTC's possession, custody, or control reflecting Hunter's Rainforest Resources historical stock interests and any transfers of Hunter's Rainforest Resources stock shares. Am. Compl. ¶ 27. However, SRTC refused to provide Johnson with any such information and documentation. *Id*. ¶ 28. Even Rainforest Resources itself requested, on more than one occasion, that SRTC provide Johnson with this information. *Id.* ¶ 29 (alleging that "Rainforest Resources sent SRTC an email requesting that SRTC provide Johnson, as executor of Hunter's estate, with any records concerning Hunter's Rainforest Resources stock interests and any transfer of those interests"); *id.* ¶ 31 (alleging that "Rainforest Resources sent a follow up email to SRTC authorizing SRTC to release 'information about Terry Hunter's shares which were potential fraudulent transfers.'" Again, SRTC refused to provide the requested information. *Id*. ¶ 30. Despite Johnson's repeated attempts to receive the requested information, SRTC stonewalled Johnson and refused to provide him with the requested information. *Id*. ¶ 33.

Ultimately, Johnson was unreasonably denied the information he sought from SRTC—information which forms the factual basis of the relief he now seeks—until at least July 2021 and likely after as it took filing a Complaint to get any actual information about the transfers from the

Defendant. The Complaint alleges that "[t]hrough the date of the Original Complaint, SRTC continued to refuse Johnson's requests for complete information and documentation as to Hunter's stock interests." Am. Compl. ¶ 34. The original complaint was filed on July 1, 2021. SOF ¶ 19. So, according to the allegations in the Complaint, which are taken to be true, Johnson was unable to discover the information forming the basis for his causes of action until July 1, 2021. The doctrine of equitable discovery thus tolled the three-year statute of limitations period until Johnson was able to discover the factual basis for his claims, which could have occurred, according to the Complaint's own allegations, no earlier than July 1, 2021. This lawsuit was filed on September 12, 2022—well within the equitably tolled three-year limitations period.

Defendant's Motion implies that the doctrine of equitable discovery is immaterial here because "Plaintiffs knew of their claims when they arose because the detail contained in Johnson's state court complaint . . . is their own information, none of it having come from SRTC." Mot. at 6. Not only does this assertion ignore the allegations in the Complaint, but Rule 12(b) does not usually allow judges to consider evidence outside the complaint when they rule on 12(b)(6) motions. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Defendant points to no allegations in the Complaint *in this action* which show that Plaintiffs knew of their claims at the time they arose. As discussed above, the Complaint in this case clearly alleges that the unauthorized transactions were not discovered until well after they were executed.

In any event, "[t]he question of when a plaintiff knew or should have known sufficient facts to trigger a statute of limitations presents a classic factual dispute that should be resolved by

the finder of fact." *Arnold v. Grigsby*, 2010 UT App 226, ¶ 13, 239 P.3d 294, *aff'd on other grounds*, 2012 UT 61, ¶ 13, 289 P.3d 449 (cleaned up). "Typically, facts must be developed to support dismissing a case based on the statute of limitations." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). Only when "the dates given in the complaint make clear that the right sued upon has been extinguished" is a statute of limitations defense appropriately resolved on a Rule 12(b) motion. *Id.* (citation and quotations omitted). "[A] court may grant a motion to dismiss based on a statute of limitations defense only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Id.* (citation and quotations omitted). Given that Defendant bases its motion on something other than the factual allegations in the Complaint, Defendant's Motion is premature: the issue of when Plaintiffs discovered their claims presents a question of fact for the trier of fact—not for the Court on a Rule 12(b)(6) motion to dismiss.[2]

In sum, under the doctrine of equitable discovery, "the reasonableness of [Plaintiffs'] conduct in light of [Defendant's] fraudulent or misleading conduct" must be considered. *Fitzgerald* ¶ 21. And any reasonably diligent plaintiff would have delayed bringing this action where Defendant intentionally concealed material information despite repeated requests to produce it. So, even if a three-year statute of limitations were applicable here, the Complaint

---

[2] For this same reason, the question of when any relevant statute of limitations expired remains open until underlying factual questions are resolved. This includes whether any relevant statute might be extended by Utah's savings statute, which extends the time for filing by one year under certain circumstances. *See* Utah Code § 78B-2-111 ("If any action is timely filed and the judgment for the plaintiff is reversed, or if the plaintiff fails in the action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the action has expired, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after the reversal or failure."); *Ewing v. State, Dep't of Transp.*, 2010 UT App 158, 235 P.3d 776.

alleges facts sufficient to support the application of equitable discovery, which tolls the statute of limitations period for Plaintiffs' first cause of action rendering that claim timely filed.

Alternatively, the Complaint was still timely filed under Utah Code § 78B-2-305(4). Defendant asserts that "the last or most recent stock transfer of the 15,010,041 shares subject of Plaintiffs' Amended Complaint was transferred on August 21, 2019." Mot. at 6. And because "Plaintiffs' Complaint herein was filed on September 23, 2022, more than 3 years after the last or most recent stock transfer of which Plaintiffs complain[,]" Defendant concludes that Plaintiffs' Complaint was untimely filed. *Id*. But this argument ignores the allegations in the Complaint. Those allegations state that the "transfers of more than 15 million shares" occurred "between May 2016 and September of 2019." Am. Compl. ¶ 23; *id.* ¶ 25 (alleging that "around August and September of 2019 . . . and around the time of Hunter's death [in September 2019], 630,000 shares . . . were transferred without authorization from Mexico.").

When viewed in the light most favorable to Plaintiffs, the Complaint alleges that unauthorized transfers occurred in the month of September 2019. Because the Complaint does not allege specific dates of the unauthorized transfers, the Court is required to adopt the inference that the most recent ones could have occurred at any point during the month of September 2019. And because this action was filed on September 12, 2022, a three-year statute of limitations period, even without the benefit of equitable tolling, does not bar Plaintiffs' Complaint.

### ii.     Plaintiffs' Claims are not Barred under Utah Code 70A-8-406.

Defendant's Motion claims, without any analysis, that Plaintiffs' claims are barred under Utah Code § 70A-8-406. Mot. at 8. This statute provides:

> If a security certificate has been lost, apparently destroyed, or wrongfully taken, and the owner fails to notify the issuer of that fact within the reasonable time after the owner has notice of it and the issuer registers a transfer of the security before receiving notification,

the owner may not assert against the issuer a claim for registering the transfer under Section 70A-8-404 or a claim to a new security certificate under Section 70A-8-405.

Utah Code § 70A-8-406(1). Defendant cites to no allegation in the Complaint where Plaintiffs allege that their security certificates were "lost, apparently destroyed, or wrongfully taken." *Id*. To be sure, Plaintiffs' Complaint alleges that Defendant executed transfers of Plaintiffs' stock *without authorization*. But Defendant does not show that a "wrongfully taken security certificate" (required by the statute) is legally equivalent to an "unauthorized transfer of stock." (alleged in the Complaint). But even if it had, this statute still doesn't apply.

Utah Code § 70A-8-406(1) only applies if the owner of the stock has "notice" of a lost, apparently destroyed, or wrongfully taken security certificate. If the owner of the stock does receive such notice, it must notify the issuer, per the statute, within a reasonable amount of time. Here, the Complaint alleges that SRTC refused to provide information that would have put Plaintiffs on notice of a "wrongfully taken" security certificate until July 1, 2021. *E.g.,* Am. Compl. ¶ 37 ("Through the date of the Original Complaint, SRTC continued to refuse Johnson's requests for needed information and documentation as to Hunter's stock interests, including the relevant transfer requests, instruction, and authorizations."). Because Plaintiffs filed their Complaint in September 2022, it was filed within a reasonable amount of time of the discovery (July 1, 2021) in compliance with the statute.

Moreover, SRTC invokes a statute that would insulate it from liability for not receiving notice of a "wrongfully taken" security certificate that SRTC wrongfully took in the first place. But principles of equitable discovery discussed above are equally applicable here: Utah courts "will not allow a party to take advantage of their own wrong." *Fitzgerald v. Spearhead Invs.*, LLC, 2021 UT 34, ¶ 23, 493 P.3d 644. The information that would have put SRTC on notice of a "wrongfully taken" security certificate, under this statute, was already in SRTC's possession.

SRTC should not be permitted to withhold that information from Plaintiffs, then invoke Utah Code § 70A-8-406 to take advantage of its own wrong. This statute should not apply here because it would call for an absurd result clearly outside the scope of its drafters' intent.

Ultimately, Defendant's statute of limitations argument fails. The statute of limitations period applicable to Plaintiffs' claims is six years under Utah Code § 78B-2-309. But even if a three-year period were applicable, as Defendant argues, sufficient facts are alleged in the Complaint to toll the three-year limitations period under the doctrine of equitable discovery. Finally, even if that doctrine were inapplicable, Plaintiffs' Complaint alleges that the most recent transactions at issue were executed in September 2019. Because the Complaint was filed in September 2022, not even the inapplicable three-year statute of limitations would bar Plaintiffs' claims. Defendant's statute of limitations argument fails.

Defendant's argument that Plaintiffs' claims are barred under Utah Code § 70A-8-406 also fails. This is because SRTC cannot claim it was not put on notice of a wrongfully taken security certificate when the information that Plaintiffs relied on in making that determination was in the possession of SRTC from the start. SRTC should not be permitted to take advantage of its own wrong.

The Motion, on these grounds, should be denied.

## II.     PLAINTIFFS' COMMON LAW CLAIMS ARE NOT PREEMPTED BY THE UCC.

Defendant claims that Plaintiffs' common law claims are preempted by the Utah Uniform Commercial Code because the UCC provides for strict liability. Defendant is mistaken. While the UCC imposes strict liability on a transfer agent for wrongful transfer, the UCC does not provide the sole remedy for a shareholder whose shares are transferred as the result of an

ineffective transfer. In fact, courts across the country have held that the UCC leaves room for common law claims.

In *Campbell v. Liberty Transfer Co.*, No. CV-02-3084, 2006 WL 3751529, *16, 20 (E.D.N.Y. Dec. 19, 2006), an investor was to receive unrestricted shares in the defendant corporation. The certificate was issued with no restriction on its face; however, when the stock sold, the transfer agent refused to register the transfer because the stock was in fact restricted. The court analyzed the Defendant's potential UCC, negligence, and conversion theories separately on their merits, and allowed a negligence claim to proceed to a new trial. The *Campbell* court makes the important distinction between nonfeasance and misfeasance, stating that "misfeasance was at common law, and remains, a recognized basis for a lawsuit by a shareholder against a transfer agent." *Id.* *17.[3]

In *Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 291–92 (S.D.N.Y. 2019), the court noted that the UCC does not necessarily displace claims at common law (*id.* at 291), and dismissed plaintiff's complaint *with leave to amend plaintiff's conversion claim* precisely <u>because</u> "the claim in this case is derivative of plaintiff's statutory rights and would fail without adequately pleading them." *Id.* at 293. The court distinguished between the transfer agent's nonfeasance (failure to deliver certificates) and misfeasance (delivery of certificates that lacked a restrictive legend). *See also Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 197 (Nev. 2014) (distinguishing claims for misfeasance and nonfeasance under the UCC, and separately analyzing common law claims on their merits, as claims for misfeasance); *cf. Mellon Inv. Servs., LLC v. Longwood Country Garden Centers, Inc.*, 263 F. App'x 277, 283 (4th Cir.

---

[3] *Cf.*, *Dewitt v. Am. Stock Transfer Co.*, 433 F. Supp. 994, 1000 (S.D.N.Y.), *amended*, 440 F. Supp. 1084 (S.D.N.Y. 1977) ("Case law has recognized that a wrongful refusal to transfer shares may amount to a conversion.") (citations omitted).

2008) (noting "there is a presumption that the U.C.C. does not displace claims based in equity…. Code sections do not occupy the equity field.") (cleaned up).

Likewise here, the Plaintiffs' claims are based not on Defendant's failure to perform its duty, but on the basis that its duties were incorrectly performed – a classic case of misfeasance.

The Tenth Circuit itself has separately analyzed UCC obligations alongside common law claims for fraud and conversion, holding—after analysis of each claim—that (1) the district court was correct in holding that plaintiff had standing to bring its UCC-based claim, (2) plaintiff did not prove its fraud claim, and (3) the district court did not err in submitting the plaintiff's conversion claim to the jury, concluding "[i]n light of the intent of the drafters of the UCC, we are convinced that the Supreme Court of New Mexico would not foreclose an action for conversion where a plaintiff also sues under § 55-8-401 [of the New Mexico UCC]." *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1192 (1992).

The Georgia Court of Appeals reversed an order dismissing the plaintiff's complaint, allowing both the UCC/statutory and common law claims to proceed where the transfer agent failed to comply with its duties under the UCC. *Neidiger/Tucker/Bruner, Inc., v. SunTrust Bank*, 530 S.E.2d 18 (Ga. App. 2000). The court concluded the plaintiff had stated a viable claim under common law claims of negligence, negligent misrepresentation, and conversion, as well as Section 11-8-204 of the Georgia UCC, stating that "the Uniform Commercial Code (UCC) goes beyond the general duty on professionals who supply information and imposes a specific duty on those who prepare and issue stock certificates to accurately disclose restrictions on the transfer of the shares." *Id.* at 372. *Accord Depository Tr. & Clearing Corp. v. Jones*, 348 Ga. App. 474, 480, 823 S.E.2d 558, 563 (2019) (allowing common law claims of conversion, breach of contract, and negligence against transfer agent to proceed).

Defendant cites to *Abbasid, Inc. v. First Nat. Bank of Santa Fe*, 666 F.3d 691 (10th Cir. 2012), to support its position that the UCC displaces claims of negligence in the Tenth Circuit. Mot. pp. 10-11 & n. 10. But *Abbasid* deals with negotiable instruments under Chapter 3 of the UCC, not share certificates, and it relates to the availability of defenses, not causes of action. Additionally, the trial court explicitly declined to decide whether Chapter 3 displaces common law defenses because the evidence showed the plaintiffs would have been unable to meet the necessary elements. *Id.* at 696.

In *Callegari v. Blendtec, Inc.*, No. 2:18-CV-308-DB, 2018 WL 5808805, *6 (D. Utah Nov. 6, 2018), cited by Defendant, the plaintiff brought claims for breach of warranties under Chapter 2 of the Utah UCC – sales. However, Chapter 2 explicitly does not apply to securities transactions: "Unless the context otherwise requires, this chapter applies to transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction…." Utah Code § 70A-2-102. This case was decided by Judge Benson, who expressly permitted a common law claim for conversion to coexist with Chapter 8 claims in *Broadcort, supra*.

Defendant also argues that the UCC leaves room for a tort remedy when it furthers the UCC policy of placing the risk on the party able to minimize the risk. Mot. at 13. Defendant's reasoning—that the Canadian notary is that party—is flawed because a prudent transfer agent will require a Medallion guarantee; contrary to Defendant's irresponsible reliance on a notary stamp in this case, Canada does in fact participate in the Medallion program.[4] And the details of

---

[4] *See* Securities Transfer Guidelines promulgated by the Securities Transfer Association of Canada (https://stac.ca/wp-content/uploads/2017/10/Securities-Transfer-Guidelines-Sept-2017-version.pdf) ("In order for the transfer of registered securities to take place, the securities must be in good order for transfer. Generally, this means that the registered owner must have signed an Irrevocable Power of Attorney Securities Transfer Form ("Securities Transfer Form") … and the

the case Defendant cites support the position that the UCC allows the Plaintiffs' claims in this case as the court held that the bank could be liable for negligence. Likewise, Defendant here could and should have required a Medallion guarantee, and could and should have verified the authenticity of a substandard notary endorsement.

Next, Defendant relies on *New Jersey Bank, N. A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339 (3d Cir. 1982). In *Bradford*, the court held that blank stock certificates that had been stolen from the defendant company's vault, forged, and accepted by a bank as security for private loans, were not valid because they bore inauthentic signatures. The court did not discuss whether the UCC displaced common law claims because the UCC was not applicable.

Defendant argues it is not the transfer agent's job to "enquire into the genuineness of the signature," describing its duties as "perfunctory in nature." Mot. pp. 9-10. It would indeed be a negligent transfer agent who viewed its job as merely clerical or perfunctory, making no attempt to exercise its duties with due care. But transfer agents are *required* to establish "[w]ritten standards for the acceptance of guarantees of securities transfers from eligible guarantor institutions; and … Procedures, including written guidelines where appropriate, to ensure that those standards are used in determining whether to accept or reject guarantees from eligible guarantor institutions." 17 C.F.R. § 240.17Ad-15(c). Further, "A registered transfer agent shall be deemed to comply with [the requirement to establish standards and procedures for accepting guarantees] if its standards and procedures include … [r]ejecting a request for transfer because the guarantor is neither a member of nor a participant in a signature guarantee program…." *Id.* § 240.17Ad-15(g).

---

signature must be "Medallion Guaranteed" by a North American bank, broker, investment dealer or other institution under an acceptable … Medallion Signature Guarantee program….").

In short, Defendant's contention that the UCC bars Plaintiffs' common law claims is not supported by case law. At a bare minimum, the Defendant in this case, a professional stock transfer agent, was required to inquire into the sufficiency of the signature guarantees. That it did not do so is actionable at common law.

## III.   PLAINTIFFS' COMMON LAW CLAIMS, AS ALLEGED IN THE COMPLAINT, ARE PLAUSIBLE.

Lastly, Defendant argues that Claims Two through Five fail to allege the required elements of each claim. Mot. at 17. This is also incorrect. Each of Plaintiffs' common law causes of action states a plausible claim for relief.

### *Negligence*

"To establish a claim of negligence, the plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Gonzalez v. Russell Sorensen Const.*, 2012 UT App 154, ¶ 20, 279 P.3d 422, 428.

Here, Plaintiffs' Complaint alleges the existence of a duty. *E.g.,* Am. Compl. ¶ 49 (alleging that "Defendant owed a duty to Hunter, Whitehall and/or Tropical of reasonable care, defined pursuant to industry standards, in processing any transfer of the Rainforest Resources shares pursuant to transfer instructions on Hunter's purported behalf without medallion signature guarantees."); *id.* ¶ 50 (alleging that "Defendant also owed Hunter, Whitehall and/or Tropical a duty of reasonable care, to perform its duties in a commercially reasonable manner and to require signature guarantees and endorsements . . . in processing any transfer of the Rainforest Resources shares."). As discussed in Section II above, this duty can coexist with duties that arise

under the UCC. Thus, the Complaint adequately alleges that Defendant owed Plaintiffs a duty of care.

Plaintiffs' Complaint also alleges that Defendant breached the foregoing duties. *E.g., id.,* ¶ 50 (alleging that "Defendants failed to discharge their duty to act with reasonable care . . . and negligently accepted forged and defective transfer instructions resulting in the unauthorized transfer of over 15 million of the Rainforest Resources common stock shares."). The Complaint thus alleges specific facts constituting Defendant's breach, which includes its acceptance of forged and defective transfer instructions. A breach has been sufficiently alleged.

As a result of this breach, "Plaintiffs were proximately harmed by Defendant's negligence and suffered damages in an amount to be proven at trial." *Id.* ¶ 52. Plaintiffs in fact suffered such damages in an amount "exceeding $75,000." *Id.* ¶ 53. Accordingly, the Complaint has alleged a plausible claim for negligence on its face.

### Gross Negligence

"[G]ross negligence has the same elements as does ordinary negligence, with an additional element of egregiousness." *Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 16, 337 P.3d 1044, 1049. Here, Plaintiffs' claim for gross negligence, just like its claim for negligence, is plausible as alleged; its claim alleges the additional element of egregiousness required for gross negligence. *E.g.,* Am. Compl. ¶ 57 (alleging that "Defendants' failure to discharge their duty . . . was careless (and also reckless) to the degree that it showed utter indifference to protecting Hunters', Whitehall's and/or Tropical's interest in the subject stocks.") (emphasis added). Assuming the truth of these allegations, Defendant's conduct plausibly rises to the level of egregiousness. Plaintiffs' claim for gross negligence is sufficient.

Defendant argues that "'[a] negligence action will not lie when the parties are in privity of contract' unless 'there is a special relationship between the alleged tortfeasor and the injured party not arising in contract.'" Mot. at 18 (citing *Tommy L. Griffing Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1985)). In other words, Defendant invokes the economic loss doctrine. *See, e.g., Larson v. Stauffer*, 2022 UT App 108, ¶ 30, 518 P.3d 175, 181 (internal quotations omitted) ("The economic loss rule declares that when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort."). However, Defendant fails to point to any allegation in the Complaint supporting its "privity" arguments, making its conclusory economic loss doctrine argument fundamentally inapposite on a motion to dismiss. And "when property falls outside of the scope of a contract, the economic loss rule will not apply." *Reighard v. Yates*, 2012 UT 45, ¶ 22, 285 P.3d 1168, 1177. Defendant's argument is unavailing. Plaintiffs' claims for negligence and gross negligence are both plausible.

### Trespass to Chattels and Conversion

"Conversion is an act of willful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession. A basic requirement of conversion is that there be a wrongful exercise of control over personal property in violation of the rights of its owner. *Nassi v. Hatsis*, 2023 UT App 9, ¶ 23, 525 P.3d 117, 122 (cleaned up). "Similarly, trespass to chattels is understood to occur when one intentionally (a) dispossess[es] another of the chattel, or (b) us[es] or intermeddl[es] with a chattel in the possession of another." *Id*. Here, Plaintiffs' Complaint meets the requirements for both of these causes of action.

The Complaint alleges that "Plaintiffs did not consent to Defendant transferring the Rainforest Resources common stocks." Am. Compl. ¶ 60. The Complaint also alleges that "Defendant *intentionally* transferred the stocks[,]" i.e., that the unlawful transfer was willful. *Id.* ¶ 62 (emphasis added). This unlawful and willful transfer "deprived Plaintiffs of their possession of the Rainforest Resources common stocks." *Id.* ¶ 63. These allegations are sufficient to establish Defendant's "wrongful exercise of control over personal property[5] in violation of the rights of its owner." *Nassi* ¶ 23. A plausible claim for conversion has been alleged. The Complaint also alleges that Defendant intentionally transferred Plaintiffs' stock without their consent, i.e., dispossessed them of their chattels[6] (stocks). So, a claim for trespass to chattels is both viable and plausible.

Defendant argues that the Complaint fails "to state a claim for conversion and trespass to chattels" because a series of questions, if these claims were plausible, remain without answer:

> [H]ow did the shares get sent to SRTC before Hunter died? If Plaintiffs lost them or they were stolen, why did Plaintiffs not report them lost or stolen going back to early 2016 when the first questionable transfers occurred? Why did Plaintiffs not post lost instrument bonds if they had been lost or stolen 8 years ago?

Mot. at 19–20. But these questions are immaterial. To state plausible claims for conversion and trespass to chattels Plaintiffs need only allege the required elements of each. As shown above, they have. They need not allege or explain the stocks' historical chain of custody or provide reasons for why certain precautionary matters weren't apparently taken. In any event, "Plaintiffs [did] not report them lost or stolen going back to early 2016" because, as the Complaint clearly

---

[5] Stocks are properly considered personal property. *See, e.g., Sachs v. Lesser*, 2008 UT 87, ¶ 18, 207 P.3d 1215, 1219 ("[S]tocks or shares in a corporation are generally considered personal property."). In any event, Defendant does not dispute this in its Motion.

[6] "'Chattel' is defined by Black's Law Dictionary as '[a]n article of personal property, as distinguished from real property." *Sherwin Alumina L.P. v. AluChem, Inc.*, 512 F. Supp. 2d 957, 970 (S.D. Tex. 2007) (citing Black's Law Dictionary 236 (6th. ed.1990)).

states, they did not know about them. *E.g.,* Am. Compl. ¶¶ 17, 26 (alleging that Johnson did not discover the unauthorized transfers until [a]fter Hunter's passing[,]" which occurred in September 2019.).

Defendant also argues that these two claims fail because Plaintiffs could have "bought replacement shares, thereby mitigating their damages." Mot. at 19. But again, this is not a required element of a conversion or trespass to chattels claim. Whether Plaintiffs in fact failed to mitigate their damages, assuming they had such a duty to begin with, is immaterial to the Motion before this Court, which considers only the plausibility of claims as they are alleged in the pleadings.

The Complaint states plausible claims for conversion and trespass to chattels.

***Unjust Enrichment***

"An unjust enrichment claim has three elements: (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Howard v. Manes*, 2013 UT App 208, ¶ 30, 309 P.3d 279, 289 (internal quotations omitted).

Here, the Complaint alleges each element of a claim for unjust enrichment. First, it alleges that "Defendant acquire[d] fees for transferring stocks between parties." Am. Compl. ¶ 68. Second, Defendant had an appreciation or knowledge of this benefit "by virtue of being the agent to transfer stocks on behalf of a person or entity." *Id*. Finally, because the transfers were "illegal and unauthorized[,]" it would be inequitable for Defendant to retain this benefit without payment of its value. *Id*. ¶ 69.  Defendant argues that this claim fails because "there is an agreement affecting the parties." Mot. at 22. But again, Plaintiffs have not alleged the existence

of any contractual relationship between the parties and Defendant cites no provision of the Complaint to the contrary—Defendant ignores the Complaint altogether. The elements of unjust enrichment have been properly alleged. The Complaint states a plausible claim for unjust enrichment.

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied.

DATED this 24th day of July, 2024.

CHRISTIANSEN LAW, PLLC


    /s/ Stephen K. Christiansen
Stephen K. Christiansen
*Attorneys for Plaintiffs*


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of July, 2024, I caused a true and correct copy of the within and foregoing pleading to be served electronically upon all counsel of record via the Court's CM/ECF system.


    /s/ Stephen K. Christiansen