MABEY & COOMBS, L.C.
J. Michael Coombs (Bar No. 3639)
Highland Ridge
4568 So. Highland Drive, Suite 290
Salt Lake City, UT  84117-4237
Telephone: (801) 467-2779
Facsimile: (801) 812-8469
Email address:  jmcoombs77@gmail.com

*Attorneys for Defendant Standard Registrar & Transfer Co., Inc.*

# IN AND BEFORE THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBERT RYAN JOHNSON, as Executor and Trustee of the Estate of Terrence Blair Hunter,<br><br>Plaintiff,<br><br>vs.<br><br>STANDARD REGISTRAR & TRANSFER COMPANY, INC., a Utah corporation,<br><br>Defendant. | **REPLY TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br><br>Case No. 2:22-cv-591-AMA-DBP<br><br>Magistrate Judge Dustin B. Pead |

Defendant Standard Registrar & Transfer Co., Inc. ("SRTC") hereby replies to its Rule12(b)(6) motion to dismiss this action on statute of limitations and other grounds.  As set forth below, Plaintiffs' Opposition fails to overcome the arguments made in SRTC's Motion.

**Reply Point I—PLAINTIFFS' CLAIMS ARE BARRED BECAUSE THEY WERE <u>NOT</u> BROUGHT WITHIN 3 YEARS, THE STATUTE OF LIMITATIONS APPLICABLE TO ALL 5 CLAIMS.**

A. <u>A 6-year statute of limitations does not apply because Plaintiffs have no</u>

**contract claim, nor do they have a written contract with SRTC.  Moreover, they are not suing over "a liability founded on an instrument in writing."  Any liability is based on the UUCC.**  In lieu of the 3-year statute of limitations, Plaintiffs argue that the 6-year statute of limitations applicable to written contract disputes (*Utah Code Ann*. § 78B-2-309) applies to the 5 claims in their Amended Complaint, none of which sound in contract.  Their first claim is for a violation of § 70A-8-404(1) of the UUCC (transfer of stock on an "ineffective endorsement").  Their second and third claims are for negligence and gross negligence, both torts.  Their third claim is for trespass to chattels and conversion, a tort.  And their fifth claim is for unjust enrichment or *quantum meruit*, an equitable remedy that does not apply to this case.[1]

In spite of having no contract-related claim, Plaintiffs contend that the 6-year statute of limitations applies because the 6-year statute of limitations applies to "any contract, obligation, *or liability founded upon an instrument in writing*" and a stock certificate, so their argument goes, is an "instrument."  Pls' Opp., p. 6 (citing Black's Law Dictionary, not case law).  So the question is:  Are Plaintiffs' claims based on the existence of a stock certificate, that is, what it represents, namely, evidence of an equity ownership in Rainforest Resources, Inc. (RRFI)?  Or are Plaintiffs' claims based on allegedly transferring ownership of a stock certificate with an "ineffective endorsement" in violation of UUCC § 70A-8-404(1)?  A stock certificate only represents equity ownership in a company and if the company denies such ownership, the shareholder can proffer his stock certificate as evidence thereof.  That is a far cry from what this case is about.  Plaintiffs'

---

[1] Unjust enrichment applies when there is no understanding or agreement as to compensation to be given for services rendered and there is an expectation of such.  As a result, compensation is considered warranted on the basis of fairness.  That scenario is inapplicable here.  Services were not rendered by Plaintiffs, so the claim makes no sense.  Also, Terry Hunter, the deceased, authorized the 9 stock transfers and further paid for them.  *See* **Exhibit A** hereto, copies of the last 2 transfers on August 21, 2019, including authorization to charge Hunter's credit card as payment therefor.

2

claims are not based on whether an RRFI stock certificate is genuine, exists, is valid, or what the holder's rights and preferences are as an equity owner in RRFI. That would be a claim against the issuer of the stock, not SRTC. In *Bank of America v. Security Pacific Nat'l Bank*, 23 Cal. App. 3d 638, 100 Cal. Rptr. 438, 1972 Cal. App. LEXIS 1244 at p. ***15 (5th App. Dist. Calif. 1972), the court rejected "founded on an instrument in writing" in a case involving conversion or statutory UCC liability. Therein, the court held that "[i]n order [for a claim] to be founded upon an instrument in writing, the instrument must itself contain a contract to do the thing, for the non-performance of which the action is brought."[2] That is not the case here. The RRFI stock certificates on their face do not contain a contractual obligation on the part of SRTC to transfer with an "effective endorsement." That is in Article 8 of the UUCC which issuers and stock transfers agents are required to abide by. Plaintiffs' contention that because the case involves a stock certificate and because it is a physical document, a dispute over mere *transfer* of the same must be "founded on an instrument in writing." If this were true, any evidence which involves "a writing" or a physical document of any kind, even an email, would necessarily result in that dispute being governed by a 6-year statute of limitations. That is not what § 78B-2-309 means or was meant to mean. It was meant to apply to breaches of written contracts between parties. *See JP Morgan Chase Bank, N.A. v. Ward*, 33 Cal.App.5th 678, 686, 245 Cal. Rptr. 3d 303, 209 Cal. App. LEXIS 271 at ***11, 2019 WL 1396740 (Cal. App. 2019), in which a more recent California appellate court held: "[A] claim is *founded upon* a writing only when it [the liability]

---

[2] In *Bank of America, supra*, the court cited a case involving an action by a shipper against a common carrier to recover overcharges in excess of published tariffs that was based upon a statute prohibiting the collection of excess tariffs and, which, as a consequence, was held to involve the three-year statute; it was not an action to recover upon a written contract of carriage which contained no agreement to refund excess charges.

'relies upon the language within a written instrument or contract.'"[3] Plaintiffs' claims are not reliant upon any language contained on the RRFI stock certificates transferred. Accordingly, there is no basis to apply a 6-year statute of limitations to Plaintiffs' claims.

**B.     Plaintiffs' claims arose between May 31, 2016 and August 21, 2019 (depending on the date of the stock transfer) and they failed to bring their action within 3-years of each transfer.** The 3-year statute of limitations applies to Plaintiffs' tort claims under § 78B-2-305(3). And because there is no express statute of limitations under Article 8 of the UUCC, the 3-year default position of § 78B-2-305(4) applies. Plaintiffs' discovery of their claims is not an issue because they and only they knew if their property was missing, stolen, lost, misplaced, or given to the wrong person. No one else would. Further, given that Plaintiff Johnson alleges in his state court complaint that "[b]ecause of his deteriorating health, Terry [Hunter] elected to give Robert Ryan Johnson power of attorney on August 1st, 2017, so that Robert could handle his affairs," Plaintiffs' own allegations demonstrate that Plaintiff Johnson himself knew and had to know of the stock transfers when they occurred. Yet Johnson did not bring this action on behalf of the Hunter Estate until September 23, 2022 over 3 years after the last 2 stock transfers subject of the Amended Complaint occurred, namely, August 21, 2019. The claims are necessarily barred.

---

[3] Similarly, in *Bank of America National Trust & Sav. Assoc. v. Cranston*, 252 Cal. App. 2d 208, 60 Cal. Rptr. 336, 1967 Cal. App. LEXIS 1500 at pp. ***11-12 (Cal. App. 1967), an earlier California appellate court held that the giving of a cashier's check to a depositor to cover the amount of a withdrawal is merely an acknowledgment of an indebtedness on the part of the bank to the payee and does not create liability upon an instrument in writing. The check is not itself in the nature of the debt, but is merely evidence of it. This distinction between liability based on a writing versus a writing merely having evidentiary value goes back a long ways in American jurisprudence. *Hertwick v. National City*, 102 Cal. 377, 36 P. 667, 1894 Cal. LEXIST 653 at pp. ***1-2 (Cal. Sup. Ct. 1894) (distinguishing a dispute founded on the granting or revoking a license versus liability related to what the license itself confers in terms of contract rights, the latter liability, if any, being "founded on a writing").

**C.     The claims of newly added Plaintiffs Tropical II Ventures, Ltd. ("Tropical") and Whitehall Trust ("Whitehall") were brought on May 24, 2024, long past the 3-year statute of limitations and therefore, their claims are barred as a matter of law.** Plaintiff Tropical, which was recently added as a Co-Plaintiff on May 24, 2024, when Amended Complaint was filed, was the transferor on the last stock transfer of 540,000 RRFI shares on August 21, 2019.  Tropical joining this suit on May 24, 2024 and attempting to sue over a nearly 5-year-old stock transfer, is long past the statute of limitations and is further estopped under §70A-8-406 as set forth below.  All claims of Tropical and Whitehall, the two newly added Plaintiffs, are barred by the statute of limitations.  If they have a fraudulent concealment claim against the Hunter Estate with whom the Amended Complaint alleges they were affiliated, perhaps they can assert such claim against Johnson for not telling them about their claims sooner.[4]

## Reply Point II—THE REQUIREMENTS OF THE EQUITABLE TOLLING DOCTRINE HAVE NOT BEEN ALLEGED BY PLAINTIFFS NOR ARE THEY MET.

Plaintiffs argue that the equitable tolling doctrine applies to extend the 3-year statute of limitations, but they do not bother to explain the doctrine or why and how it applies.  Pls' Opp., p. 9.  The equitable discovery doctrine may be invoked: (1) where the plaintiff was unaware of the cause of action due to the defendant's fraudulent concealment (the concealment prong), and (2) when exceptional circumstances so require, regardless of any wrongdoing by the defendant.

---

[4] In ¶ 1, Am. Comp., Plaintiffs allege:  "By this action, Plaintiffs seek to recover damages from Defendants' improper and unauthorized transfer of Terrence Blair Hunter's ("Hunter"), Whitehall's and Tropical's millions of shares of Rainforest Resources that belonged to Hunter, Whitehall and Tropical and/or were held in trust by Whitehall for Hunter's benefit."  *See also* ¶ 12, Stmt. of Facts No. 4, SRTC's Motion to Dismiss ("Terry [Hunter] owned – directly and indirectly, through several companies or trusts, a total of 15,010,041 common shares of Rainforest Resources, Inc. ("RRIF") stock.").  Accordingly, Tropical and Whitehall are essentially alter egos or nominees of Hunter, the deceased.

5

*Fitzgerald v. Spearhead Investments, LLC*, 2021 UT 34 at ¶ 16, note 3, 493 P.3d 644, 649, 2021 Utah LEXIS 89 at \*\*\*9 (Utah 2021). As to the first prong, Plaintiffs have never been ignorant of their causes of action. To be sure, the deceased, Terry Hunter, died on September 3, 2019, and but a few weeks later, Plaintiff Johnson sent SRTC an email claiming that shares of deceased, Terry Hunter, had been wrongfully transferred. *See* Exhibit A to SRTC's Motion. Plaintiff Johnson then brought a lawsuit in Utah state court on July 1, 2021 on behalf of the Hunter Estate, less than 2 years after Hunter's death, specifically alleging "forged and deficient stock powers," along with an "ineffective endorsement" claim under § 70A-8-404, both regarding transfer of the same 15 million shares of RRFI subject of this lawsuit. *See* ¶'s 3 and 4, Statement of Facts, SRTC's Motion to Dismiss. *This occurred long before Plaintiffs discovered any records from SRTC.* Nowhere in the Amended Complaint do Plaintiffs allege that SRTC concealed their ability to discover their claims, let alone that SRTC did so fraudulently.

As to the second prong of the test, "[t]he equitable tolling doctrine applies a balancing test to determine if *exceptional circumstances* exist where the application of the statute of limitations would be irrational or unjust." *Christensen v. Am. Heritage Title Agency, Inc.*, 2016 UT App. 36 ¶ 27, 368 P.3d 125, 132-33, 2017 Utah App. LEXIS 32 at p. \*\*\*18-19 (Utah App. 2016). Here, Plaintiffs' Am. Comp. fails to allege or identify any "exceptional circumstances." While SRTC did not provide copies of transfer documents to Plaintiff Johnson until December 1, 2023 in conjunction with its Initial Disclosures, the delay was only because SRTC believed Johnson lacked standing or capacity to act as personal representative of the Hunter Estate under Canadian, Mexican, and Utah law. *See* Docket Entry No. 19, dated June 23, 2023, the international probate law brief SRTC filed at the behest of Judge Parrish but which she chose to

disregard when she wrote her September 18, 2023, Memorandum Decision denying SRTC's motion to dismiss on standing and capacity grounds, more than likely because SRTC's brief involved international law and was beyond the scope of federal law.[5]

Plaintiffs next site §75-3-802 of the *Utah Probate Code* for the principle that causes of action belonging to an estate are tolled for 3 months after the decedent's death. Pls' Opp., p. 8, top. But this is not what the statute says. In fact, it says the opposite. The statute applies to debts or demands *against* the decedent which might have been enforced in his lifetime. *Bradshaw v. McBride*, 649 P.2d 74, 1982 Utah LEXIS 1005 at p. **7 (Utah 1982). SRTC is not suing the Hunter estate. The estate is suing it. Accordingly, Plaintiffs misread the statute by 180 degrees. Section 75-3-802 of the *Utah Probate Code* does not apply here.

Plaintiffs likewise misread § 78B-2-111 of the *Utah Judicial Code*. Pls' Opp., p. 12, note 2. That statute, titled **Failure of action – Right to commence new action**, provides:

> (1) If any action any action is timely filed and the judgment for the plaintiff is reversed, or if the plaintiff fails in the action or upon a cause of action otherwise than upon the merits, *and the time limited either by law or contract for commencing the action has expired*, the plaintiff, or if he dies and the cause of action survives, his representatives, may commence a new action within one year after the reversal or failure. [*Emphasis in italics added*.]

---

[5] SRTC's brief comprising Docket Entry No. 19 demonstrates that Johnson failed to comply with Canadian and Mexican probate law when he petitioned a Utah probate court to appoint him foreign personal representative of the estate in Utah. One cannot be appointed a foreign personal representative in Utah if one was not properly appointed personal representative in the foreign jurisdiction from which the initial probate came. SRTC could have challenged the unopposed Utah probate court foreign appointment—and still could—but instead decided to defend this action on the merits.

Plaintiffs ignore the italicized language above. At the time of dismissal of Johnson's state court action by Judge Lawrence on November 21, 2021, the statute of limitations would have to have expired for Johnson to get an extra year.[6] But it had not. Plaintiffs' initial state court action before Judge Lawrence was dismissed on a date well within the then-unexpired 3-year statute of limitations from whence the last two August 21, 2019 stock transfers occurred. *See* Statement of Facts Nos. 3 and 4, SRTC's Motion to Dismiss (showing that the last two transfers of the entire 15 million shares occurred on August 21, 2019); *see also* **Exhibit A** confirming the same.

## Reply Point III—PLAINTIFFS FAIL TO EXPLAIN THEIR FAILURE TO COMPLY WITH § 70A-8-406 AS A CONDITION TO BRINGING SUIT, A UUCC ESTOPPEL PROVISION WHICH BARS THEIR CLAIMS.

As mentioned in SRTC's Motion to Dismiss, UUCC § 70A-8-406 titled **Obligation to notify issuer of lost, destroyed, or wrongfully taken security certificate** provides:

> (1) If a security certificate has been lost, apparently destroyed, or wrongfully taken, and the owner fails to notify the issuer of that fact within the reasonable time after the owner has notice of it and the issuer registers a transfer of the security before receiving notification, *the owner may not assert against the issuer a claim for registering the transfer under Section 70A-8-404 or a claim to a new security certificate under Section 70A-8-405*. [*Emphasis in italics added*.]

Plaintiffs never complied with this statute, which is a prerequisite for bringing this suit. No case holds that waiting past the time the statute of limitations has run is "reasonable notice" under the statute. Plaintiffs' rebuttal (Opp., pp. 13-15) is that *their* failure to give § 8-406 notice to SRTC is somehow SRTC's fault. But SRTC would have had no way of knowing whether the

---

[6] *See Norton v. Hess*, 2016 UT App 108, 374 P.3d 49, 52, 2016 Utah App. LEXIS 108 (Utah App. 2016).

shares had been lost, stolen, misplaced, or the transfers unauthorized if no one told it. Hunter gave the instructions to SRTC to transfer the shares and he paid the stock transfer fees. *See* **Exhibit A**. How could SRT have known that the owners of the shares would someday claim the transfers were unauthorized? SRTC did not own the shares. Did Plaintiffs not know that their own certificates were missing? Of course they did. The statute puts the burden of giving notice on the "owner" of the shares, not SRTC. If shares belonging to Plaintiffs going back to May 31, 2016 in this allotment of 15 million shares had been mis-transferred, why did the owner(s) not give notice to SRTC within a reasonable time after that? Instead, Plaintiffs waited years. They waited until transfers of the 15 million shares had occurred, after the horses had left the barn. To prevent that is the reason for this statute. Section 70A-8-406 bars Plaintiffs' claims as no notice was given before the shares were transferred and only Plaintiffs would know.

### Reply Point IV—IN CITING IRRELEVANT CASE LAW, PLAINTIFFS FAIL TO COMPREHEND WHY THEIR UCCC "INEFFECTIVCE ENDORSEMENT" CLAIM PRE-EMPTS OR "DISPLACES" THEIR OTHER CLAIMS.

When the UCC provides a comprehensive remedy for the parties to a transaction—not just Article 8—common law and other non-Code claims and remedies should be pre-empted or "displaced." This is the prevailing view for the sake of certainty and uniformity in commercial transactions.[7] This concept and principle is lost on Plaintiffs.[8] In their rebuttal, Plaintiffs erroneously cite cases involving wrongful refusal to transfer stock based on disputes over the propriety of removing restrictive legends under a variety of conditions such as whether the transferor had an exemption from securities registration, or was somehow otherwise bound by

---

[7] SRTC's Motion to Dismiss, Point II, pp. 8-17 (citing numerous Tenth Circuit and other authorities).
[8] *See* Pls' Opp., pp. 15-20.

corporate restrictions preventing transfer such as on stock received in a merger.[9] These authorities are irrelevant. In this case, the only thing SRTC is accused of doing is transferring stock on an "ineffective endorsement" in violation of § 70A-8-404(1). It is not accused of failing to transfer stock in violation of § 70A-8-401, the cases Plaintiffs cite. What SRTC is accused of does not involve any common law violation and Plaintiffs cite no case showing it does. It is not negligent conduct because a stock transfer agent, in relying on a signature guarantee, is not required by law to enquire into the genuineness of the signature.[10] That is not its job. Accordingly, its exposure under § 8-404(1) is strict liability. There is no basis to assert other claims against SRTC and Plaintiffs' Opposition shows no reason why there would be. Now if SRTC left certificates lying around the office and they were stolen or if it participated in a 10b-5 stock fraud in some fashion in addition to transferring stock on an "ineffective endorsement," that would be different. But those are not the facts of this case.[11] Accordingly, this court should embrace the majority of jurisdictions holding that, like *Crawford Supply Group*

---

[9] *See, e.g.*, Pls' Opp., pp. 16-17.

[10] *See* SRTC's Motion to Dismiss, Arg. Point II, pp. 8-9.

[11] Plaintiffs imply in note 4, p. 18 of their Opposition that the failure of SRTC to transfer the shares on Medallion signature guarantees somehow violated the law but this is not true. American stock transfer agents are not required to follow Canadian Guidelines. As the Introduction to the Canadian Guidelines states, "The Guidelines reflect common industry practice. However, the practice of individual transfer agents may vary from the Guidelines." These are *guidelines*, not rules. Transfer agents may accept alternate forms of document/signature authentication to process a transfer if they choose. An issuer can also determine if it wants to waive Medallion guarantees. The definition of a notary is this: "A public officer who witnesses the making of a document (as a deed) and signs it to show that it is authentic." This is not to ignore that Hunter often sent in stock from Mexico, not Canada, and Medallion signature guarantees are not available in Cancun, Mexico. Plaintiffs also cite CFR Rule17Ad-15 titled **Signature guarantees** for the notion that the law requires use of Medallion signature guarantees. But this too is false. The rule only speaks in terms of a transfer agent setting up standards for acceptance of guarantees from eligible guarantor institutions. The rule does not require use of Medallion signature guarantees.

*v. Bank of America* (*see* note 11, p. 11, SRTC's Motion), "the UCC displaces common law remedies to the extent that the facts alleged fit in a provision of the UCC."[12]

### Reply Point V—PLAINTIFFS FAIL TO REBUT WHY THEIR COMMON LAW CLAIMS FAIL TO SATISFY THE ELEMENTS OF EACH CLAIM.

Plaintiffs fail to explain how their 5 claims satisfy the required elements of each. There is no conversion by SRTC if some imposter submitted 15 million shares of RRFI for transfer between May 31, 2016 and August 21, 2019 and had gotten Hunter, the deceased, throughout those years, to pay for the transfers. And there is no negligence when SRTC had no common law duty to Plaintiffs other than those imposed on a transfer agent under the UUCC, including SEC and FINRA rules and regulations. Plaintiffs fail to distinguish or point to any case showing a common law duty owed by SRTC to Plaintiffs in conjunction with its UUCC duty to transfer on an "effective endorsement" under Article 8 of the UUCC. And Plaintiffs fail to explain why an unjust enrichment claim applies when Hunter willingly paid the transfer fees for the 9 separate stock transfers between May 31, 2016 and August 21, 2019, giving SRTC his credit card information so the transfers could be made. *See, e.g.,* last 2 pages of **Exhibit A** hereto.

### CONCLUSION

Based on the foregoing, Plaintiffs' 5 claims should dismissed with prejudice.

DATED this <u>6th</u> day of August, 2024.

MABEY & COOMBS, L.C.

  /s/ *J. Michael Coombs*
J. Michael Coombs
*Attorneys for Defendant SRTC*

---

[12] Plaintiffs also argue that cases cited by SRTC involve other Articles of the UCC besides Article 8 and are thus inapplicable. But those cases cited by SRTC hold that if a specific wrong or infraction is specifically covered by a UCC provision, no matter which Article it is, that claim pre-empts or displaces common law. That is the point of citing those cases. It confirms application of the UCC principle of pre-emption or displacement.

## CERTIFICATE OF SERVICE

I hereby certify that on this <u>6th</u> day of August, 2024, I caused a true and correct copy of the foregoing, including Exhibit A, to be served on those counsel identified below via email as per the Court's electronic filing system:

*Andrew G. Deiss*
*David Ferguson*
*Corey Riley*
*deiss@deisslaw.com*
*dferguson@deisslaw.com*
*criley@deisslaw.com*

Stephen Christiansen
steve@skclawfirm.com

                                 <u>/s/ J. Michael Coombs</u>
                                  J. Michael Coombs